UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI-DIVISION

ELIAS SANCHEZ SIFONTE and
VALERIE RODRIGUEZ ERAZO,

    Plaintiffs,

v.

CASE NO.: 1:21-CV-20543

JOSUE FONSECA a/k/a JAY
FONSECA, TELEMUNDO
INTERNATIONAL STUDIOS, LLC,
TELEMUNDO INTERNACIONAL, LLC
a/k/a TELEMUNDO DE PUERTO RICO,
LLC, NBCUNIVERSAL NETWORK
GROUP, LLC, TM TELEVISION, INC.,
TM ENTERTAINMENT, INC., and
DOES 1-10,

    Defendants.
_____/

## PLAINTIFFS' MOTION TO REMAND
## AND INCORPORATED MEMORANDUM OF LAW

    Plaintiffs, ELIAS SANCHEZ SIFONTE and VALERIE RODRIGUEZ ERAZO, by and through their undersigned counsel, hereby file this Motion to Remand ("Motion") and respectfully request that this Court remand this case to the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida for lack of subject matter jurisdiction, and in support thereof, state as follows:

### BACKGROUND AND INTRODUCTION

    1.    Plaintiffs Elias Sanchez Sifonte and Valerie Rodriguez Erazo (jointly, "Plaintiffs") filed the initial complaint on December 31, 2020 (the "Initial Complaint"), in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida ("State Court").

    2.    The Initial Complaint was filed against Josue Fonseca ("Fonseca"); Telemundo International Studios LLC; Telemundo Internacional LLC; Telemundo of Puerto

Rico LLC;[1] Jagual Media, LLC, NBCUniversal Media, LLC; Telemundo Network Group, LLC; TM Television, Inc., TM Entertainment, Inc.; and Does 1 – 10 (collectively, the "Removing Defendants").

3. On February 9, 2021, the Removing Defendants removed this action pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 to the United States District Court for the Southern District of Florida on the grounds of diversity of citizenship (ECF No. 1).

4. Plaintiffs have, simultaneously with this Motion to Remand, filed an amended complaint as a matter of course under Federal Rules of Civil Procedure ("FRCP") 15(a)(1)(A) to substitute multiple defendants, along with this instant motion to remand the case back to State Court (the "Amended Complaint").

5. The Amended Complaint (i) dismisses without prejudice Telemundo International Studios LLC, Telemundo Internacional LLC and TM Entertainment, Inc. as Defendants; and (ii) substitutes Does 1 through 3 for Antonio G. Mojena ("Mojena"), Jose Cancela ("Cancela"), and Manuel Martinez ("Martinez") (collectively with the remaining Removing Defendants, "Defendants"). Cancela and Martinez are domiciled in the State of Florida, and therefore are citizens of the State of Florida.

6. On or around January 4, 2019, Defendants commenced coordinating the publication or republication of a series of stories, broadcasts, live feeds, articles, and social media posts, and continued the constant publication against Plaintiffs through the end of 2020.

7. During that time, Defendants maliciously and with the specific intent to injure Plaintiffs published false and defamatory statements about Plaintiffs that were known by them to be false and/or with reckless disregard of the statements' truth or falsity at the time of publication, with the intent to cause injury to Plaintiffs, their professional reputations and their family's welfare and well-being.

8. Furthermore, Defendants' joint actions also constitute negligent supervision, intentional infliction of emotional distress, tortious interference with an advantageous business relationship, and civil conspiracy.

---

[1] Initial Complaint inadvertently referred to Telemundo of Puerto Rico LLC as "Telemundo de Puerto Rico LLC".

9. Fonseca, acting as agent for Defendants, with their assistance, encouragement, knowledge, acquiescence, authorization and approval, created and disseminated scandalous rumors and fabrications handpicked for their predictable high-ratings' value and ability to generate profits. Furthermore, Defendants used media framing and agenda setting tools to create false impressions of Plaintiffs by implication, while pursuing intentionally damaging and defamatory, yet profitable stories.

10. Most, if not all, of the stories, broadcasts, live feeds, articles and social media posts have been published on the internet; continue to be accessible for anyone located in Florida; and have been accessed by members of the Puerto Rican community currently living in Florida (approximately 1.1 million).

11. As a direct result of Defendants' actions, Sanchez lost his job and clients, endured death threats against himself, Rodriguez and their minor children, and Plaintiffs were forced to uproot from Puerto Rico and seek harbor in the State of Florida permanently.

12. The Plaintiffs continue to suffer economic, emotional and reputational damages as a result of Defendants' continued attacks to discredit, disparage, and persecute Plaintiffs relentlessly, even when they have been residing and leading a private life with their minor children in the State of Florida for over a year and half.

13. This case should be remanded to State Court because there are no grounds to establish federal subject matter jurisdiction pursuant to either federal question jurisdiction (28 U.S.C. § 1331) or diversity jurisdiction (28 U.S.C. § 1332) theories. Based on the lack of federal subject matter jurisdiction, Plaintiffs request that the Court remand this matter to State Court.

## ARGUMENT AND MEMORANDUM OF LAW

**I.     Standards for Remand and Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction. *Taylor v. Appleton*, 30 F.3d 1365,1367 (11th Cir. 1994). "Consequently, lower federal courts are empowered to hear only those cases for which there has been a congressional grant of jurisdiction." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000). A defendant may remove an action to a federal court if that court has original jurisdiction over the action. 28 U.S.C. § 1441(a). While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim and, as such, may choose to file a claim in state or federal court. *Burns v.*

*Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987*); Great Northern R. Co. v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 239, 62 L.Ed. 713 (1918).

Removal jurisdiction and original jurisdiction are, generally, co-extensive, as both rely on the presence of a federal question or diversity in the citizenship of the parties. In fact, 28 U.S.C. § 1441 states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Nevertheless, since removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. *Ash v. Providence Hosp.*, 2009 WL 424586, at *5 (S.D. Ala. Feb. 17, 2009); *see University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir.1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction); *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F3d 362, 365-366 (5th Cir. 1995). In other words, removal jurisdiction has an impact on the constitutional allocation of authority between the state and federal courts. *Id*.

The United States Supreme Court has interpreted removal statutes to evidence an intent by Congress to restrict removal jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941). Moreover, courts should strictly construe the requirements of removal jurisdiction and remand all cases in which such jurisdiction is doubtful. *Shamrock*, 313 U.S. at 109 (1941); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). In that sense, the Court is required to construe the removal statutes strictly to prevent "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal, a result that is costly ...for all the parties and for society when the case must be relitigated." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (internal citations and quotations omitted).19.   Therefore,  if   it appears that the district court lacks subject matter jurisdiction, the case should be remanded back to state court. 28 U.S.C. § 1447(c). Consequently, when the plaintiff and defendant clash on the issue of jurisdiction, uncertainties are resolved in favor of remand. *Burns*, 31 F.3d at 1095 (11th Cir. 1994).

Nonetheless, where there is diversity of citizenship, the defendant may remove the action to federal court provided the action meets the requirements of 28 U.S.C. § 1332. In such cases, Defendant, as the removing party, bears the burden to show that there is federal jurisdiction over the case. *Lowery v. Alabama Power Co.*, 483 F. 3d 1184, 1208 (11th Cir. 2007); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). That burden is a "heavy one". *Crowe*, 113 F.3d at 1538 (11th Cir. 1997).

District courts have original jurisdiction over civil actions where the matter in controversy exceeds $75,000, and the suit is between citizens of different states. See 28 U.S.C. § 1332(a). However, diversity jurisdiction requires complete diversity, meaning that every plaintiff must be diverse from every defendant. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996)). Additionally, pursuant to 28 U.S.C. § 1441(b)(2), a civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may be remanded if any of the parties in interest properly joined as defendants is a citizen of the State in which such action is brought", this precept is also known as the "Forum Defendant Rule." In consequence, a federal court lacks subject matter jurisdiction over a matter brought pursuant to section 1332(a) if a defendant is a citizen of the State in which the action is brought. Therefore, in a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action. *Incorvaia v. Incorvaia*, 161 F. App'x 847 (11th Cir. 2006); *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679 (9th Cir. 2006); *Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 545 U.S. 546, 125 S.Ct. 2611, 2616-17, 162 L.Ed.2d 502 (2005).

II.   **Amended Complaint Substituting Parties**

   A.   <u>**Defendants and Counsel were Aware that Plaintiffs Intended to Amend the Complaint Prior to Removal**</u>

Defendants' counsel had been made aware that Plaintiffs were in the process of amending the complaint to include additional parties and claims. Following is a summary of communications between the undersigned Navarro and Defendants' counsel:

   a.   On January 25, 2021, attorney Deanna Shullman ("Shullman") from Shullman Fugate PLLC contacted Navarro to introduce herself as counsel for all

named Defendants. The conversation focused on three main issues: (i) Shullman's request for certain corporate Defendants to be dropped and cleaning up the parties without court intervention; (ii) Shullman's request for a time extension to file answer; and (iii) amendment by Plaintiffs to add additional Defendants to the complaint.

    b.    On January 26, 2021, Shullman emailed Navarro introducing her associate Giselle Girones; identified the corporate Defendants' issues (including heavy citations for her legal theories); and requested that the complaint be amended to remove improper Defendants. Shullman stated that the identified entities would seek swift dismissal and in the case of NBCUniversal Media, LLC, cautioned that it generally seeks sanctions as a matter of course as a deterrent. Finally, Shullman pointed to the Florida Rules of Civil Procedure 1.420(a)(1) and 1.250 as basis for notice of dismissal or stipulation in connection with the corporate Defendants.

    c.    On January 27, 2021, partner Monica Castro of Holland & Knight LLP ("Castro") contacted Navarro to introduce herself as counsel for Josue Fonseca and Jagual Media, LLC. This was a contradiction to Shullman's portrayal of her Firm representing all Defendants in the instant action. During the conversation, Navarro also mentioned to Castro that Plaintiffs would be amending the complaint to include additional parties. Castro followed up with an email communication memorializing the conversation.

    d.    On January 27, 2021, Shullman emailed Navarro (less than 24 hours from her prior e-mail communication) following up on the corporate parties' issues; confirming the conversation regarding Plaintiffs' upcoming amendment to include additional parties by stating "[y]ou also mentioned an amendment to add additional defendants;" and asking for an extension of time for all Defendants through April 1, 2021.

    e.    On February 2, 2021, Shullman emailed Navarro claiming, among other things, that she could not commit to answering at this point; questioning if agreement to an extension was conditioned on an answer; claiming a suspicion that there would be dismissal basis somewhere in the more than 100 statements regardless; requesting a position on dropping the parties; and finally asking for clarification on service for all defendants.

   f. Navarro replied agreeing to the 60-day extension.

   g. On February 9, 2021, Shullman emailed Navarro indicating that the matter had been removed to federal court and that we had agreed to an April 2 deadline; and offered waiving service for Telemundo of Puerto Rico LLC in exchange for the April 2 extension. See Exhibit 1. [Note: Many of these emails were included in the record by Defendants as an Exhibit to their Motion for Extension of Time to File Response/Reply/Answer to Complaint filed on February 10, 2020 with heavily redacted portions (ECF No. 7-1).]

 Furthermore, on January 27, 2021, Plaintiffs sent pre-suit notices to the following parties: (i) Mr. Manuel Martinez of Telemundo Station Group; (ii) Telemundo Media LLC; and (iii) Comcast Corporation. Plaintiffs had also sent a pre-suit notices to Mr. Jose Cancela on December 12, 2020. The January 27, 2021 pre-suit notices were acknowledged received on January 29, 2021. As evidenced by the e-mail communications, Plaintiffs had clearly communicated their intention to amend the Initial Complaint to include additional Defendants, and such Defendants were notified prior to removal based on having received pre-suit notices. In addition, Defendants' counsel was clearly aware of Plaintiffs' intention to amend the Initial Complaint to include additional Defendants.

 On the other hand, Shullman consistently represented to Navarro that Defendants would be filing an extension request with the State Court. Defendants' appear to have concealed the fact that they intended to remove the action to the U.S. District Court, while inducing Plaintiffs to believe that they would indeed file a time-extension request in State Court. It was justifiable for Plaintiffs to rely on such representations, which afforded them reasonable time to proceed with amending the Initial Complaint as a matter of course, as had been made abundantly clear to Defendants. Defendants' intentions to conceal can be inferred from the fact that: (i) they failed to file the time-extension in State Court that they so eagerly insisted on; and (ii) Defendants' counsel emailed Navarro on February 2, 2021 following up on the time-extension for State Court while having Defendant Josue Fonseca sign a citizenship declaration for removal purposes on that same date. The declaration was included as Exhibit B of the Removal Notice (ECF No. 1-3). Defendants' actions are tantamount to bad faith. *In re Engle Cases*, 283 F. Supp. 3d 1174, 1225 (M.D. Fla. 2017); *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993).

### B. Amendment to Complaint Including Additional Parties After Removal

#### a. Amendment under FRCP 15(a) v. 28 U.S.C. § 1447(e) Standard

Federal Rule of Civil Procedure 15(a) governs amendments to pleadings. Rule 15(a) gives a plaintiff the right to amend a complaint once as a matter of course, so long as no responsive pleading has been filed. *Coventry First, LLC v. McCarty*, 605 F.3d 865, 869 (11th Cir. 2010). Courts have determined that where plaintiff had not previously amended its complaint and defendant had not filed a responsive pleading, so that plaintiff could have amended its complaint as a matter of course but, instead, chose to file an unnecessary motion to amend, with the proposed amendments attached, the district court had discretion to deny the motion to amend as futile; therefore, by filing the motion to amend, plaintiff waived the right to amend as a matter of course and invited the district court to review its proposed amendments, and, having done so, it could not then complain that the district court accepted this invitation to so rule. *Coventry*, 605 F.3d at 865 (11th Cir. 2010).

Nevertheless, 28 U.S.C. § 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." In other words, Section 1447(e) is designed "to avoid a plaintiff's gamesmanship of divesting the court of subject-matter jurisdiction by giving the Court discretion to deny joinder if the added defendant would destroy diversity." *Andreasen v. Progressive Express Ins. Co.*, 276 F. Supp. 3d 1317, 1321 (S.D. Fla. 2017). However, Rule 15(a)(1) appears to provide a loophole where plaintiffs can avoid judicial approval of non-diverse party joinder and force remand. This Rule permits a plaintiff to amend his pleading once as a matter of course—that is, without leave of the Court—within 21 days after serving it or after the defendant serves a responsive pleading under Rule 12(b), (e), or (f). *Andreasen*, 276 F. Supp. 3d at 1321 (S.D. Fla. 2017). Therefore, the heart of the issue is the interplay between 28 U.S.C. § 1447(e) and Federal Rule of Civil Procedure 15(a)(1).

Notwithstanding, the majority of courts that have addressed the issue, including here in the Southern District of Florida, have "concluded that the discretionary decision called for by § 1447(e) is appropriate even when plaintiff has amended as a matter of course under Rule 15(a)." *Andreasen*, 276 F. Supp. 3d at 1323 (S.D. Fla. 2017) (quoting *Masters v. Erie Ins. Co.*, 2014 U.S. Dist. LEXIS 19037, at *4 (W.D.N.Y. Feb. 13, 2014)) (internal quotations omitted).

The decision under section 1447(e) to "(1) deny joinder or (2) permit joinder and remand the case.... is committed to the sound discretion of the district court." *Absorbezz LLC v. Hierseman*, 2019 WL 11506034, at *2 (S.D. Fla. Sept. 12, 2019); *Small v. Ford Motor Co.*, 923 F. Supp. 2d 1354, 1356 (S.D. Fla. 2013).

Generally, courts are suspicious of a plaintiff's efforts to join a non-diverse defendant after removal—but before any discovery has been taken—particularly where the plaintiff knew about the non-diverse defendant all along. *T&G Corporation v. United Casualty & Surety Insurance Company*, 2021 WL 494246, at *3 (S.D. Fla. Feb. 10, 2021); *Alleyne v. Am. Sec. Ins. Co.*, 2011 WL 12711451, at *3 (S.D. Fla. Apr. 12, 2011). But "[t]he mere fact that the requested amendment would divest the Court of its jurisdiction does not, in itself, establish that Plaintiff's motive in seeking amendment is to accomplish this aim." *TG CORPORATION*, 2021 WL 494246, at *3 (S.D. Fla. Feb. 10, 2021); *Fiddler's Creek Cmty. Dev. Dist. 2 v. U.S. Bank Nat'l Ass'n*, 2012 WL 2358295, at *3 (M.D. Fla. June 20, 2012). As described in this Motion, Plaintiffs not only had the intention of adding the additional parties prior to removal but had informed Defendants of such intentions through their counsel and pre-suit notices and had relied on Defendants' representations for the timing of the filing.

    b.  *Fraudulent Joinder v. Balancing Test Standard*

Recent caselaw from this District Court had determined consistently that the fraudulent joinder doctrine is not the applicable standard on the joinder of a non-diverse defendant after removal, since the determination must be based upon the plaintiff's pleadings at the time of removal. 28 U.S.C.A. § 1441; Fed. R. Civ. P. 21; *Tan v. Birkbeck*, 2020 WL 3866747, at *2 (S.D. Fla. July 9, 2020); *Andreasen*, 276 F. Supp. 3d at 1317 (S.D. Fla. 2017); *Ibis Villas at Miami Gardens Condo Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 799 F. Supp. 2d 1333, 1337 n.1 (S.D. Fla. 2011). That said, while "the fraudulent joinder doctrine is not directly applicable to the post-removal context, it can be a relevant factor." *Id*.

When a removing defendant alleges fraudulent joinder (which has not been alleged in this case yet), "the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). This burden is a "heavy one." *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981). Indeed, "federal courts are not to weigh the merits of a plaintiff's claim

beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538. "If there is even a **possibility** that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir. 1983) (emphasis added)." *Tan v. Birkbeck*, 2020 WL 3866747, at *2 (S.D. Fla. July 9, 2020).

Likewise, it is well settled law, that in making the decision whether to permit or deny joinder, "the district court must balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits." *Small,* 923 F. Supp. 2d at 1357 (S.D. Fla. 2013). More specifically, in "applying this balancing test, the district court should consider: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in asking for amendment, (3) whether plaintiff will be significantly injured if amendment is not allowed, and (4) any other factors bearing on the equities." *Id.*; *Absorbezz*, 2019 WL 11506034, at *1 (S.D. Fla. Sept. 12, 2019). The question before the Court is whether to deny the joinder of Defendants Cancela and Martinez, or to permit joinder, thereby eliminating diversity jurisdiction and remanding to state court. *See* 28 U.S.C. § 1447(e). In making that determination, the Court must consider each of the *Small* factors in turn (also known as the *Hensgens* factors).

        ***c.***     ***Analysis of the Balancing Test Factors***

The first Small factor is "the extent to which the purpose of the amendment [adding a non-diverse defendant] is to defeat federal jurisdiction." *Small*, 923 F. Supp. 2d at 1356 (S.D. Fla. 2013). To make that assessment, "courts often look to see whether the plaintiff was aware or should have been aware of the non-diverse defendant at the time the suit was filed." *Ibis Villas at Miami Gardens Condo Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 799 F. Supp. 2d 1333, 1335–36 (S.D. Fla. 2011) (quoting *Seropian v. Wachovia Bank, N.A.*, 2010 WL 2822195, at *3 (S.D. Fla. July 16, 2010)). Plaintiffs concede being aware of Cancela prior to the filing of the Complaint as evidenced by the pre-suit notice dated December 12, 2020. Cancela was, at the time of the events, and continues to be, the President and General Manager of Telemundo of Puerto Rico LLC. The Complaint states that Fonseca's defamatory statements were made with Cancela's endorsement or acquiescence as he has appeared on public record to personally promote and defend Fonseca's show *Jay y sus Rayos X*. As an example, during an

interview for an article that appeared on Primera Hora, one of Puerto Rico's dailies, on October 7, 2015, Cancela indicated that "through the show Jay y sus Rayos X, Telemundo intends to use the impact of social media platforms to carry out what we believe is the most important televised project in the history of television in Puerto Rico" (ECF No. 1-2, Pg. 18, ¶ 32).

Cancela is also mentioned in connection with one of the defamatory broadcasts by Fonseca on April 16, 2019. Plaintiffs became aware that Fonseca would be broadcasting an interview to the Secretary of Health of Puerto Rico and would be make allegations of corruption and intervention by Plaintiffs regarding certain contracts. Plaintiffs sent an email communication to Cancela. The email expressed unequivocally that Plaintiffs had no involvement whatsoever, direct or indirect, in any of the Department of Health's affairs, hiring, decision-making, contract awards or any other matters (ECF No. 1-2, Pgs. 34-35, ¶¶ 66.o and 67.c). The Amended Complaint includes additional counts against Cancela for negligent supervision, intentional infliction of emotional distress, tortious interference with an advantageous business relationship, and civil conspiracy.

The truth of the matter is that Plaintiffs had every intention to include Cancela as a Defendant from the onset, and this is the reason why a pre-suit notice was sent to him on December 12, 2020. However, inadvertently, Cancela's name was not included in the list of defendants on the final complaint draft that was filed on December 31, 2020. As explained herein, Plaintiffs intended to amend the Initial Complaint in State Court as a matter of course to include additional defendants, substitute othersm, and include additional claims. Once the amended complaint would have been filed, summons would have been requested from the State Court for, among others, Telemundo of Puerto Rico LLC and Cancela. Since both parties are in Puerto Rico, Plaintiffs planned on using the same approach for service of process used for the other two paired defendants located in Puerto Rico, i.e., Josue Fonseca with Jagual Media, LLC (serviced physically and simultaneously on January 12, 2021) and TM Television, Inc. with TM Entertainment, Inc. (serviced physically and simultaneously on January 21, 2021). This is also the reason why Telemundo of Puerto Rico LLC had not been served yet by Plaintiffs. Clearly, Plaintffs' motivation in adding Cancela is not to destroy diversity jurisdiction, but to correct an inadvertent procedural mistake, and to hold

accountable every principal that conspired and participated in authorizing, promoting, and controlling the actions by Defendants' and its agents causing harm and injury to Plaintiffs.

Plaintiffs deny being aware of Martinez prior to filing the Initial Complaint. Initially, Plaintiffs believed that Cancela's direct supervisor was Mr. Cesar Conde. As proof, Mr. Conde was sent a pre-suit notice on December 11, 2020. However, before filing, Plaintiffs became aware that Mr. Conde had been promoted from Telemundo to NBCUniversal News division. Thus, he was not included as a Defendant. After filing the Initial Complaint, Plaintiffs continued investigating the matter, and towards the end of January 2021, Plaintiffs learned, upon information and belief, that Cancela reports directly to Martinez, President of Telemundo Station Group.

Therefore, Martinez is the President of Telemundo Stating Group, which upon information and belief is a DBA of NBCUniversal Media, LLC. Martinez is directly involved in directing, authorizing, and approving the actions of Defendant Telemundo of Puerto Rico LLC. Plaintiffs sent a pre-suit notice to Martinez on January 27, 2021 and the return-receipt confirmation was received on January 29, 2021. As the case with Cancela, Plaintiffs' motivation in adding Martinez is not to destroy diversity jurisdiction, but to hold accountable every principal that conspired, participated in authorizing, promoting, and controlling the actions by Defendants' and its agents causing harm and injury to Plaintiffs. The Amended Complaint includes additional counts against Martinez for negligent supervision, intentional infliction of emotional distress, tortious interference with an advantageous business relationship, and civil conspiracy.

Under Florida law, the factors that are essential to the existence of an actual agency relationship are (1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Goldschmidt, M.D. v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990); *Hoch v. Loren*, 273 So. 3d 56, 58 (Fla. Dist. Ct. App. 2019). Plaintiffs believe that discovery will prove that Fonseca acted as an agent of Telemundo affiliates, Cancela and Martinez, among others, during his broadcasting of the defamatory statements and other actions. In summary, the first factor should weigh in favor Plaintiffs, and therefore, joinder of the parties because Defendants will not be able to prove with clear and convincing evidence that Plaintiffs have added these parties with the aim of destroying diversity.

The second factor for the Court to consider is "whether plaintiff has been dilatory in asking for amendment." *Small*, 923 F. Supp. 2d at 1357. Plaintiffs have not created any unnecessary delays, especially in light of the fact that Plaintiffs believed that Defendants would be requesting a 60-day extension with the State Court as was misrepresented by Defendants. Moreover, Plaintiffs' pace cannot be characterized as dilatory because they addressed the additional defendants' amendment in communications with Defendants' counsel prior to removal, and in their first amended complaint and first motion in this matter before both State Court and this Honorable Court. As in *Andreasen*, which also involved an amended pleading under Rule 15(a), the proper focus is instead on Plaintiff's overall delay in bringing its claim against the non-diverse defendant. *See Absorbezz*, 2019 WL 11506034, at *3; *Andreasen,* 276 F. Supp. 3d at 1322. Both in *Andresean* and *Absorbezz*, the Court determined that Plaintiff was clearly aware of non-diverse defendant's alleged involvement not just at the inception of the case, but for several years before it sued in state court. Therefore, "Plaintiff's behavior in seeking the amendment [was] dilatory." *Id*. Plaintiffs' circumstances are diametrically different to those in *Andresean* and *Absorbezz*. Plaintiffs intended all along to include Cancela and his immediate supervisor as Defendants; and Plaintiffs acted swiftly in sending the pre-suit notice to Martinez upon learning of his identity in preparation for the amendment, all before the case was removed. There is absolutely no proof that Plaintiffs have been dilatory; therefore, the second factor should also weigh in favor Plaintiffs and permitting joinder.

The third factor for the Court to consider under *Small* is "whether plaintiff will be significantly injured if amendment is not allowed." 923 F. Supp. 2d at 1357. Plaintiffs would most certainly be prejudiced if barred from joining Cancela and Martinez to this case. As the Middle District of Alabama explained in *Godwin v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2006 WL 3924795, at *2 (M.D. Ala. Dec. 15, 2006), "the burden of having to prosecute two separate lawsuits is a significant injury which, although it does not mandate allowing the amendment, weighs in favor of permitting the joinder." *TG CORPORATION*, 2021 WL 494246, at *4 (S.D. Fla. Feb. 10, 2021). One of the central arguments of the Amended Complaint regarding Telemundo's tactics for profit-making is that Fonseca, acting as agent for Defendants conspired with them and, through their assistance, encouragement, knowledge, acquiescence, authorization and approval, created and disseminated scandalous

rumors and fabrications handpicked for their predictable high-ratings' value and ability to generate profits (ECF No. 1-2, Pg. 12, ¶ 20). Plaintiffs also argue that Defendants negligently supervised Fonseca's actions; Defendants acted jointly and conspired to defame, intentionally inflict emotional distress, tortiously interfere with advantageous business relationships and to cause harm and injury to Plaintiffs. Furthermore, some of the defamatory broadcasts achieved historical rating records for Telemundo of Puerto Rico. These facts point to a scheme that reached higher in the corporate ladder atop passed Fonseca and his producers. As such, Cancela and Martinez are not mere nominal defendants, but indispensable parties to prove Plaintiffs' claims against Telemundo for knowingly and malicious defamation, negligent defamation and supervision, intentional infliction of emotional distress, tortious interference with advantageous business relationship and civil conspiracy. Therefore, if the joinder is not allowed, Plaintiff would still have to pay lawyers to litigate identical claims in two different fora—a needless outlay of time and money. For these reasons, the third factor should also weigh in favor of Plaintiffs and permitting joinder.

Finally, "[i]n deciding whether to permit or deny joinder, .... the district court should consider ... any other factors bearing on the equities." *Absorbezz*, 2019 WL 11506034, at *3; *Andreasen,* 276 F. Supp. 3d at 1322. If Plaintiff is required to pursue a separate lawsuit in state court against Cancela and Martinez, there exists the potential of inconsistent results and a waste of judicial resources. The interests of efficiency and judicial economy favor litigating all of Plaintiff's claims relating to the multiple torts in a single lawsuit. Duplicative litigation arising from the same incidents and involving similar parties must be weighed in the balance of equities. *Smith v. Autauga N. R.R., LLC*, 2017 WL 6060898, at *1 (M.D. Ala. Nov. 16, 2017); *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987) (a defendant's interest in a federal forum must be weighed against "the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources").

While the balance of the equities should include consideration of Defendants' right to choose a federal forum, the court should consider that Plaintiff, as master of his own claim, initiated this case in State Court and intended from the outset to sue Cancela and his immediate supervisor. His supervisor's name did not become known to Plaintiffs until after filing of the Initial Complaint. When Martinez's identity was learned, Plaintiffs promptly moved to send the pre-suit notice in preparation for an amendment. In other words, Plaintiffs

were diligent in their efforts to include Cancela's immediate supervisor and discover his identity, both whom they intended to sue from the initial filing of their Complaint in State Court. The fourth factor should also weigh in favor of Plaintiffs and permitting joinder.

For each of the reasons described above under the *Small* factors, this Court should find, based on the standards for remand and subject matter jurisdiction, the balancing test of equities, and the fraudulent joinder doctrine, that Plaintiffs' joinder of Cancela and Martinez should be permitted under 28 U.S.C. § 1447(e) and remand this action to State Court.

    **C.**    **Citizenship for LLC Defendants**

The citizenship of a limited liability company is determined, for diversity purposes, by the citizenship of all the members composing the entity. *Rolling Greens MHP v. Comcast SCH Holdings*, LLC, 374 F.3d 1020, 1021-22 (11th Cir. 2004). Indeed, since the onset of the limited liability companies, Federal Courts have had to ascertain the citizenship of LLCs for purposes of diversity jurisdiction. In several early decisions, courts treated LLCs like corporations, albeit without any discussion. Debra R. Cohen, *Limited Liability Company Citizenship: Reconsidering an Illogical and Inconsistent Choice*, 90 Marq. L. Rev. 269, 276 (2006); *see SMS Financial II, LLC v. Stewart,* No. 3:95-CV-1280-D, 1996 WL 722080, at *1 (N.D. Tex. Dec. 9, 1996) (requiring an LLC to specify its state of incorporation and principal place of business to establish that diversity jurisdiction is satisfied); *Dali (USA), Inc. v. Lee*, No. 96 Civ. 3305 (MBM), 1996 WL 592723, at *1 (S.D.N.Y. Oct. 16, 1996) (repeating pleadings, which aver that Bogari International, LLC "is a New York corporation with its principal place of business in New York"); *Cosmetech Int'l, LLC v. Der Kwei Enter. and Co.*, 943 F. Supp. 311, 313 (S.D.N.Y. 1996) (deeming LLC to be a New York corporation).

In 1996, in *Carlos v. Adamany*, a district court expressly indicated that LLCs would be treated like corporations for purposes of diversity jurisdiction. No. 95 C50264, 1996 WL 210019, at *3 n.4 (N.D. Ill. April 17, 1996). Judge Reinhard noted that if the plaintiff's new LLC replaced the defunct corporate plaintiff, citizenship for purposes of diversity would still be determined under the nerve center test. *Id*. at *2. Not long after, in *Cosgrove v. Bartolotta*, for the first time, a Circuit Court (the Seventh Circuit) rejected this approach. 150 F.3d 729 (7th Cir. 1998). Since *Cosgrove*, every circuit that has expressly decided the issue has concurred, so for purposes of determining citizenship for diversity, LLCs are treated like partnerships. Cohen, *supra*, at 280.

Although we have found many cases from this District Court following this approach, there are two cases from the 11th Circuit Court that deserve our attention. Both cases were actually decided after *Rolling Greens*. Firstly, in *MacGinnitie v. Hobbs Group, LLC*, a former employee filed action against its former employer for declaratory and injunctive relief in state court, alleging that the language of the non-solicitation and confidentiality provisions of his employment agreement effectively prevented him from competing with former employer. Action was removed to federal court. In the opinion, the Circuit Court referred to and treated the defendant-appellee LLC as a corporation: "Defendant–Appellee Hobbs Group, LLC ("Hobbs"), an insurance brokerage firm, employed Plaintiff–Appellant Douglas J. MacGinnitie as its Senior Vice President and General Counsel in 1998. Hobbs is incorporated in the State of Delaware, and until 2002 it undisputably(sic) had its principal place of business in the State of Georgia." 420 F.3d 1234, 1237 (2005). In the second case, *Henderson v. Washington Nat. Ins. Co.*, the Circuit Court reversed and remanded a district court decision. Two diverse defendants had removed the case from state court alleging that the third defendant was fraudulently joined. Henderson moved to remand the case back to Alabama state court, but the district court denied Henderson's motion to remand and later granted the diverse defendants' motion to dismiss. Interestingly, the Circuit Court described the diverse defendants in their opinion in the following manner: "Washington National Insurance Company is incorporated in Illinois, where it also has its principal place of business. Conseco Services, LLC is incorporated in Indiana, where it also has its principal place of business." 454 F.3d 1278, 1280 (11th Cir. 2006).

More recently, a case from the United States District Court for the Eastern District of Pennsylvania concluded that for purposes of determining the citizenship of a limited liability company whose sole member is a holding company that does not direct or control the operations of the limited liability company, we must look to the "nerve center" of the limited liability company to which the holding company has delegated the operational decision-making. (In this case, the LLC was originally a Pennsylvania corporation that converted into a Delaware LLC.) This conclusion is based upon the rationale of the *Hertz* holding and the unusual circumstances surrounding the relationship between the limited liability company and the holding company that owns an investment in it. Therefore, because the defendant's "nerve center" is located in Pennsylvania and under 28 U.S.C. § 1441(b) an action is not

removable when any defendant is a citizen of the state in which the action was brought, the court granted the motion for remand. *Brewer v. SmithKline Beacham Corp.*, 774 F. Supp. 2d 720, 722 (E.D. Pa. 2011).

The *Brewer* case has important similarities with Defendant Telemundo of Puerto Rico LLC. It is a limited liability company organized under the laws of Puerto Rico with its principal place of business in Florida. ECF No. 1, Exh. C, Pg. 5 ¶ 27. We also know that the sole member of Telemundo of Puerto Rico LLC is WKAQ Holdings LLC (ECF No. 1-4, Pg. 5 ¶ 27). Additionally, we know that Telemundo of Puerto Rico LLC was originally Telemundo of Puerto Rico (a civil partnership with two partners) that filed a certificate of conversion on December 23, 2019. On that same day, a certificate of merger was filed to be effective on December 31, 2020, merging both partners with the new LLC and having the LLC as the surviving entity. The partners were WKAQ of Puerto Rico Holdings I, Inc. and WKAQ of Puerto Rico Holdings II, Inc. Upon information and belief, the now sole member holding entity WKAQ Holdings LLC does not direct or control the operations of Telemundo of Puerto Rico LLC, because Cancela, as President and General Manager, responds directly to Martinez. Thus, under *Brewer*, we would have to look to the "nerve center", which we are told is in Florida. Under *Brewer* precedent, Telemundo of Puerto Rico LLC is a Florida citizen because its sole member is a holding company that does not direct or control the operations of the limited liability company, and under *Hertz* we must look to the "nerve center" of the limited liability company to which the holding company has delegated the operational decision-making.

Finally, there is case from the Supreme Court of the United States that supports the *Brewer* conclusion. In *Puerto Rico v. Russell & Co.*, the Court determined, after adopting a functional analysis, that a hybrid organization (partnership) known as *sociedad en comandita* was such a "complete" juridical person that, like a corporation, it was deemed to have entity citizenship. Cohen, *supra*, at 279; 288 U.S. 476, 480-481 (1933). This even when the partners were domiciled outside of Puerto Rico. In consequence, by relying on *Carlos*, *MacGinnitie*, *Henderson*, *Brewer, Hertz* and *Russell*, this Court should find that Telemundo of Puerto Rico LLC is a citizen of Florida and therefore, with no diversity jurisdiction, the case must be remanded to State Court.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this Motion to Remand and remand this case to the State Court because there is no appropriate basis for federal subject matter jurisdiction over the claims alleged in the Amended Complaint, which arise under State law, and removal is barred for Defendants based on the Forum Defendant Rule.

## LOCAL RULE 7.1 CERTIFICATION

The undersigned counsel certifies that reasonable efforts were made to confer with counsel for Defendants in a good faith effort and requested that the relief herein be agreed upon but that no agreement could be reached.

Respectfully submitted,

By: *Luis F. Navarro*
Luis F. Navarro, Esq.
Florida Bar No.: 629359
Lorenzo J. Palomares, Esq.
Florida Bar No.: 100785
**NAVARRO**
*Attorneys at Law*
*Counsel for Plaintiffs*
66 W. Flagler Street, 6th Floor
Miami, Florida 33130
Tel: (305) 447-8707
Fax: (305) 447-3787
Email: civil@nmbesq.com
lou@nmbesq.com
mromo@nmbesq.com
palolaw2@gmail.com

and

By: */s/ Eric Ruben Huertas Morales*
Eric Ruben Huertas Morales
Florida Bar No.: 103722
*Co-Counsel for Plaintiffs*
Email: erhuertas@eragroupllc.com
Tel: (904) 609-9998

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on February 26, 2021, on all counsel or parties of record on the Service List below.

Rachel R. Fugate, Esq.
Deanna K. Shullman, Esq.
Giselle M. Girones, Esq.
Shullman Fugate, PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, Florida 33411
dshullman@shullmanfugate.com
rfugate@shullmanfugate.com
ggirones@shullmanfugate.com
*Counsel for Defendants*

                                            By: */s/ Luis F. Navarro*
                                                Luis F. Navarro, Esq.