UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI-DIVISION

ELIAS SANCHEZ SIFONTE and
VALERIE RODRIGUEZ ERAZO,

      Plaintiffs,

                                CASE NO.: 1:21-CV-20543

v.

JOSUE FONSECA a/k/a JAY
FONSECA, et, al

      Defendants.
_____/

## PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DIMISS AND INCORPORATED MEMORANDUM OF LAW[1,2]

Plaintiffs Elias Sanchez Sifonte ("Sanchez") and Valerie Rodriguez Erazo ("Rodriguez"), by and through undersigned counsel file this opposition to Defendants' Telemundo of Puerto Rico, LLC ("Telemundo PR"), NBCUniveral Media, LLC ("NBCUniversal"), Telemundo Network Group, LLC ("Telemundo Network"), Antonio Mojena ("Mojena"), Josue Fonseca ("Fonseca") and Jagual Media, LLC's ("Jagual Media") (collectively "Defendants") Motion to Dismiss Amended Complaint ("Motion") pursuant to Fed.R.Civ.P. Rule 12 a(b)(6) and Local Rule 7.1 and in support thereof state as follows:

## SUMMARY OF THE ARGUMENTS

Defendants' Motion to Dismiss should be denied because:

I.     Amended Complaint states a Plausible Claim for Relief and is Procedurally Sufficient

II.    Plaintiffs Satisfied the Pre-Suit Notice Requirement for all Defamatory Statements

III.   Statements are "of and concerning" Plaintiffs

IV.   Statements are Defamatory

---

[1] Plaintiffs are aware of the Court's preference for consolidated briefing on matters applicable to multiple parties in matters. For this reason, Plaintiffs have adopted and joined the arguments laid out in their oppositions for the other Defendants to avoid duplicative briefing on the same arguments across multiple oppositions filed.
[2] Plaintiffs adopt and incorporate the arguments and memorandum of law in their opposition to TM Television's Motion to Dismiss and Transfer incorporates said arguments in those oppositions as if fully set forth herein.

NAVARRO
66 W. Flagler Street, 6th Floor, Miami, Florida 33130

V.       Statements are not Constitutionally Protected Rhetorical Hyperbole or Opinion

## <u>INTRODUCTION AND BACKGROUND</u>

This case concerns the Defendants' vicious character assassination of Plaintiffs. With no sense of irony, the Defendants have chosen to launch their Motion with misrepresentations and falsehoods.  The Motion represents an absurd and illusory exercise of deflection. First, to ricochet attention away from their actionable misconduct, and in seeking to prejudice the Court's view of Plaintiffs; Defendants, yet-again, reframe the narrative by falsely implicating Sanchez as an unethical, misogynistic, homophobic and opportunistic lobbyist that acted unlawfully by refusing to follow court-ordered warrants, was involved in alleged crimes committed by two Puerto Rico government officials that unlawfully steered $15.5 million in federal contracts to politically connected lobbyists, benefitted from confidential state information and intervened in government matters.

The brunt of the defamatory publications included in the Amended Complaint occurred between July 8, 2019 and August 1, 2019, said publications while coetaneous had nothing to do with the political scandal dubbed as "Telegram Gate". On the contrary, Defendants' used the political scandal as a subterfuge in their character assassination scheme.

Secondly, Defendants attempt to parade Fonseca as a victimized-opinion-and-commentary journalist targeted by Plaintiffs out of spite in an effort to bury the vast majority of their "widespread media coverage." In support of their theory, Defendants reference six (6) news articles or reports outside the pleadings in support of their Rule 12(b)(6) Motion and falsely insinuate, at a minimum, that the articles/reports support Defendants defamatory statements and accusations. [DE 74 at 1 -3]. Defendants maliciously and with the specific intent to injure Plaintiffs published false and defamatory statements about Plaintiffs that were know by them to be false and/or with reckless disregard of the statements' truth or falsity at the time of publication, with the intent to cause injury to Plaintiffs, their professional reputations and their family's welfare and well-being. As an example of the defamatory actions included in the Amended Complaint, Defendants maliciously and recklessly: (a) using and unrelated case number that had nothing to do with Plaintiffs, stated that a sealed criminal indictment was filed against Sanchez in Miami, Florida and that **Sanchez's arrest in Florida was imminent**; (D.E. 69 ¶ 50), and (b) stated that Plaintiffs Sanchez and Rodriguez had an

undue influence and were engaging in corrupt practices in the Puerto Rico Health Department citing a documented a Whistleblower Complaint as evidence, when such complaint never mentions either Sanchez or Rodriguez. It is important to note, that none of the Plaintiffs **have never been** indicted, tried, pleaded or found guilty of any criminal, civil or ethical matter. (D.E. 69 ¶ 29).

Most, if not all, of the stories, broadcasts, live feeds, articles, and social media posts have been published on the internet; continue to be accessible for anyone located in Florida and have been accessed by members of the Puerto Rican community currently living in Florida.

The non-stop content is so heavily biased and slanted against Plaintiffs that it is difficult to imagine a more obvious case in which media defendants either deliberately or recklessly defamed individuals without any regard for the truth. The truth is that Defendants blanketed the Internet, social media, and air waves through Defendants' many websites, social media accounts, applications and television signals and expect to assert their right to expose Plaintiffs to opprobrium without the slightest responsibility or accountability for the truth of those statements, but all the while reaping riches derived from destroying Plaintiffs' reputations.

As a direct result of Defendants' actions, Sanchez lost his job and clients, endured death threats against himself, Rodriguez and their minor children. Plaintiffs continued to suffer economic, emotional, and reputational damages as a result of Defendants continued attacks to discredit, disparage, and persecute Plaintiffs relentlessly, even when they had been residing with their minor children in the State of Florida since June 2019.

Defendants recycled their arguments but overlooked a critical difference in the Amended Complaint. As ordered by the Court on November 1, 2021 [DE 67], the Amended Complaint identifies the individual claims against each Defendant. As such, Defendants' Motion should be denied in its entirety.

## ARGUMENTS AND MEMORANDUM OF LAW

"Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" See *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir.2004); 256 F.3d at 1283–

84 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Thus, the movant sustains a very high burden. The question is not whether Plaintiff will ultimately prevail, but whether his allegations are sufficient to allow him to conduct discovery in an attempt to prove his allegations. *See Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579-80 (11th Cir. 1986). The factual allegations in the complaint are taken as true and all reasonable inferences are made in favor of Plaintiff. *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1070 (11th Cir. 2004).

Also, after the Supreme Court decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), to survive a motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555, 127 S.Ct. 1955. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that the defendant has acted unlawfully. The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *Hines v. FiServe, Inc.*, No. 8:08-cv-02569-JSM-AEP, 2010 WL 12498838, at *1 (M.D. Fla. Mar. 25, 2010) (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)). Because Plaintiffs' Amended Complaint satisfies Rule 8(a)(2) and states facts that raise the right to relief above the speculative level, plausibly entitling them to relief, Defendants' Motion should be denied.

## I.   AMENDED COMPLAINT STATES A PLAUSIBLE CLAIM FOR RELIEF ISPROCEDURALLY SUFFICIENT

Under Florida law, "[d]efamation encompasses both libel and slander. Slander is ordinarily confined to defamatory spoken words, whereas libel pertains to defamatory written statement." *Klayman v. Judicial Watch, Inc.,* 2014 WL 2158418, at *4 &n.2 (S.F. Fla. May 23, 2014) (quotations omitted) (similarly treated the elements of libel and slander, and defamation

generally). To recover from libel or slander under Florida law, a plaintiff must demonstrate that: 1) the defendant published a false statement; 2) about the plaintiff; 3) to a third party; and 4) the [plaintiff]suffered damages as a result of the publication." *Thompson v. Orange Lake Country Club, Inc.,* 244 F. Supp. 2d 1368 1376 (M.D. Fla. 2002 (citing *Valencia v. Citibank Int'l,* 728 So. 2d 330, 330 (Fla. 3d DCA 1999)). "A published statement is libelous *per se* if: '(1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject on to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession/'" *Klayman,* 2014 WL 2158418 at *2 (quoting *Richard v. Gray,* 62 So. 2d 597, 298 (Fla. 1953) (en banc)).

Defendants recycled their arguments that Plaintiffs' Amended Complaint is yet against a shotgun pleading and fails to separately delineate their claims between each other and among the Defendants, nor were the counts separated by defendants; stating that Plaintiffs replaced the term "Defendants" with the names of each Defendant, but overlooked a critical difference in the Amended Complaint. As ordered by the Court on November 1, 2021 [DE 67], the Plaintiff shall separately set forth their individual claims against each defendant and shall be simple and direct.

Unlike the original complaint, Plaintiffs Amended Complaint identifies which facts are common to both Plaintiffs and which facts apply to each Plaintiff individually. Also, the amended complaint clearly identifies the specific conduct attributed to each defendant in each count. [DE 69, pgs. 10-68, ¶27-130].

Further, Plaintiffs clearly separate each count to identify which Plaintiff is raising the count, the bases for each count and identifies against which Defendant the count is brought. [DE 69, pgs. 68-135, ¶131 – 380]. Plaintiffs' Amended Complaint is clear as to the specific conduct of the Defendants and identifies the same. By way of example, **Count I** of the Amended Complaint is for defamation relating to the July 16, 2019 Broadcast - Sanchez against Fonseca, Jagual, Telemundo PR, Telemundo Network, NBCUniveral, and TM Television [DE 69, pg. 68]. **Count V** is for defamation relating to the March 2020 Broadcast – Sanchez against Fonseca and Jagual [DE 69, pg. 85]. Each count also clearly identifies the specific conduct attributed by each Defendant.

**Count I:**

<u>COUNT I – DEFAMATION (July 16, 2019 Broadcast)</u>
**(Sanchez against Fonseca, Jagual, Telemundo PR, Telemundo Network, NBCUniversal, and TM Television)**

1.      TELEMUNDO NETWORK broadcasts programs and original content aimed at Latino audiences within the Commonwealth of Puerto Rico and through live internet broadcast, to other jurisdictions of the United States and the rest of the world. TELEMUNDO PR broadcasted television shows which contained defamatory and false content about SANCHEZ and RODRIGUEZ.

2.      FONSECA was the host of some of the most important shows in media networks in Puerto Rico such as Telemundo. FONSECA streamed, Internet-posted and broadcasted "news" and commentary stories which contain libelous statements about Plaintiffs in writing and slanderous statements in video segments broadcasted on Telemundo television programs including *Día a Día, Telenoticias* and *Jay y sus Rayos X, Telenoticias.*

3.      NBCUNIVERSAL registered, administered, and technologically managed the domain name www.telemundopr.com where the defamatory statements about SANCHEZ and RODRIGUEZ were published to the world through its internet servers located in Miami, Florida. NBCUNIVERSAL is the owner of Telemundo PR and operates and owns the streaming and live programing application that simultaneously broadcasts all of Telemundo PR programing throughout the United States and the World.

**Count V:**

<u>COUNT V – DEFAMATION (March 28, 2020 Broadcast)</u>
**(Sanchez against Fonseca and Jagual)**

177.   FONSECA was the host of some of the most important shows in media networks in Puerto Rico such as Telemundo. FONSECA streamed, Internet-posted and broadcasted "news" and commentary stories which contain libelous statements about Plaintiffs in writing and slanderous statements in video segments broadcasted on Telemundo television programs including *Día a Día, Telenoticias* and *Jay y sus Rayos X, Telenoticias.*

85
NAVARRO
66 W. Flagler Street, 6th Floor, Miami, Florida 33130

178.   JAGUAL was founded by FONSECA and created content for television shows and internet podcasts that were broadcasted throughout Puerto Rico, Florida and the World with the assistance of TELEMUNDO PR, NBCUNIVERSAL, TELEMUNDO NETWORK and TM TELEVISION which contained defamatory and false content about SANCHEZ.

As such, Defendants Motion should be denied.

## II.   PLAINTIFFS SATISFIED THE PRE-SUIT NOTICE REQUIREMENT FOR ALL DEFAMATORY STATEMENTS

In connection with the pre-suit notice required by Section 770.01 of the Florida Statutes, Defendants not-so-cleverly redefine the applicable standard for sufficient notice based solely on (i) the text of Section 770.01, while ignoring the ample case law contradicting their claims, (ii) misrepresenting the case law mentioned in their Motion to bend it to their benefit, and (iii) conveniently disregarding the content of the pre-suit notice sent to all Defendants in this case, which fully complies with the applicable standard.

Ordinarily, a plaintiff's "[f]ailure to comply with the notice provision of §770.01 requires dismissal of the complaint for failure to state a cause of action." *Mancini v. Personalized Air Conditioning & Heating, Inc.*, 702 So.2d 1376, 1377 (Fla. 4th DCA 1997). But the sufficiency of notice, for purposes of compliance with the notice provision of section 770.01, depends on whether the alleged defamation is an oral statement or a written one. *Cousins v. Post-Newsweek Stations Fla., Inc.*, 275 So. 3d 674, 680 (Fla. Dist. Ct. App. 2019), reh'g denied (May 22, 2019), review denied, No. SC19-1047, 2019 WL 4860709 (Fla. Oct. 2, 2019). Contrary to Defendants' allegations, Plaintiffs fully complied with §770.01, by providing Defendants with a Pre-Suit Notice that included all the claimed defamatory statements both in Spanish and

7
NAVARRO
66 W. Flagler Street, 6th Floor, Miami, Florida 33130

English (with the required context of the statements), with reference to: the broadcast; hyperlink; screenshot and time stamp where applicable, with more than five days prior to filling the Original Complaint. *See* attached **Exhibit A**.[3]

Defendants argue that in the case of oral statements (such as the videos available online referenced in Plaintiffs' pleading), *Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, 1474-75 (S.D. Fla. 1987), stands for the notion that (1) "best possible notice" turns on the degree of specificity available to the plaintiff before filing suit and (2) the relevant inquiry is what the "Plaintiff was capable of doing". This is simply dishonest. To start, the *Nelson* case is from 1987, when obviously no information, let alone videos, were readily available online, thus it would be far-fetched to argue that this case is applicable or even relevant to Plaintiffs' case. In fact, it dealt with the pre-suit notice sufficiency requirement for written articles (not broadcasts, not videos) published by the Associated Press ("AP"). On February 1, 1983, Ms. Nelson's attorney sent a letter to AP asking for a retraction and/or apology, but without specifying any actual defamatory articles or quoting from any actual wires or stories republished by newspapers such as the Miami Herald or the New York Post. However, plaintiff had sent notices to the Miami Herald and The New York Post for articles attached to its complaint that clearly recognized them as AP stories. Ms. Nelson argued that her letter was sufficient under Fla. Statute 770.01.

"Upon review of the relevant case law, the Court is convinced that the statute requires the best possible notice. Thus, there are cases like Nezelek, **allowing more general notices to be sufficient, because that is the best possible notice where there has been an oral broadcast**. The best possible notice in this case would have been, at a minimum, and especially upon receipt of AP's letter of February 8, 1983, to refer to the September 29, 1983 Miami Herald article and the November 5, 1983 New York Post article, and quote verbatim from them; because the fact is that Plaintiff was capable of doing so." *Nelson* at 1474. Therefore, the verbatim quote requirement was particular to the circumstances of the *Nelson* case. The Court's interpretation of the pre-suit notice statute standard is found elsewhere on the opinion: "The statute is designed to allow a defendant the opportunity to be put on notice so as to take necessary steps to mitigate potential damages and perhaps avoid precisely the

---

[3] Attached with Exhibit A, is an example of the Pre-Suit Notices sent by Plaintiffs in December 11, 2020.

type of litigation now before the Court. AP had no such opportunity." As discussed later on, Defendants cannot claim that they were not put on notice so as to take the necessary steps to mitigate potential damages and avoid litigation, since Defendants intentionally opted to ignore every single request for retraction.

On the next case, Defendants raised their baseless argumentation to another level holding that in *Skupin v. Hemisphere Media Grp., Inc.*, No. 3D19-1555, 2020 WL 6153447, at *3 (Fla. 3d DCA Oct. 21, 2020), the Court found that plaintiff failed to satisfy §770.01 as to statements in fifth and sixth news reports **where English and Spanish transcripts of the several broadcasts at issue were readily available**. It is astonishing to read how Defendants take any case that sounds similar to Plaintiffs' circumstances (i.e., *Skupin* mentions English and Spanish transcripts much like Plaintiffs' pleadings) and manipulate the ruling to forcefully fit their desired outcome. Dr. Skupin alleged that in 2017, defendants broadcast/rebroadcast or published/republished four episodes of a weekly Spanish-language television shows, which contained thirty-four (34) alleged defamatory statements against him. Dr. Skupin's complaint alleged counts for defamation, libel per se and tortious interference all stemming from the four episodes. The trial court dismissed the defamation and libel per se counts and ruled that the single publication rule barred the tortious interference count.

However, it was on appeal that Dr. Skupin, for the first time ever, alleged that "defendants made defamatory statements when they broadcast and published **a fifth and sixth news report, separate from the alleged defamatory statements alleged in the first four reports**." Incredibly, Defendants tried to imply that this case stands for an interpretation of sufficiency under §770.01 requiring English and Spanish transcripts when available as the best possible notice. The truth of the matter is that a cursory reading of *Skupin* indicates clearly and unequivocally that this is not a best possible notice case in the least sense. The appeal court explained that a tortious interference claim fails when the alleged defamatory statements are presented for the first time at the appeal level, and there is no record of even a pre-suit notice. This is a diametrically different than what Defendants purport in their Motion. More than gamesmanship, this seems to amount to plain dishonesty toward the Court.

Defendants are relentless in their misguided pursuit to induce this Court to error. They push forward by claiming that *Rendon v. Bloomberg, L.P.*, 403 F. Supp. 3d 1269 (S.D. Fla. 2019) is applicable to Plaintiffs' circumstances due to a finding by the court that the "best possible

notice was 'verbatim quotes' of the specific statements alleged to be defamatory because, based on the level of detail in the complaint, '[p]laintiff was capable of doing so' prior to filing suit." The *Rendon* court actually found that **"[b]ecause the defamatory materials in the instant case arise from print media**, **and not from oral broadcast**, the best possible notice consists of verbatim quotes." (emphasis added). Although the *Rendon* case correctly describes the standard for best possible notice applicable to Plaintiffs, it would be unbecoming of Defendants to concede and cite cases appropriately: "In *Duffy v. Fox News Networks*, LLC, No. 14-CV-1545, 2015 WL 2449576 *1 (M.D. Fla. May 20, 2015), the plaintiff sued Fox for an allegedly defamatory cellphone video that was broadcasted on the news, depicting the plaintiff as a thief. The plaintiff sent Fox pre-suit notice which contained a link to the broadcast segment and its related article, stating the "imputations of theft" were defamatory. The court held that the pre-suit notice was sufficient because it identified the source of the defamatory material" (internal citations omitted). *Rendon* at 1275. In particular, the Duffy case held that "[s]ignificantly, the Demand Letter provided a link to the Article and the Segment that Fox aired regarding the Video, which is only one minute and thirty-seven seconds long, and stated that the "imputations of theft" contained therein were the bases for the defamation claim. The Demand Letter thus identifies the source of the allegedly defamatory statements and is sufficient to put Fox on notice and satisfy the statutory prerequisites for the defamation action." *Duffy* at *2.

Plaintiff not only complied with the Pre-Suit notice giving Defendants ample time to recant their statements, but also gave sufficient notice of the defamatory statements subject to their claim, their context and method of publication. Thus, Defendants allegations are unsubstantiated.

## III.   STATEMENTS ARE "OF AND CONCERNING" PLAINTIFFS

Defendants reformulate their arguments regarding dismissal under the shotgun pleading theory, into a First Amendment defense. The alleged claims regarding lumping of Defendants and/or Plaintiffs have already been debunked. However, Defendants jumped right back in the saddle to accuse Plaintiffs of avoiding "the constitutional mandate that each of them limits his or her claims to those statements for which each is the direct object of.

The "of and concerning" requirement is generally a question of fact for the jury, although it can be decided as a matter of law where the statements "are incapable of supporting a jury's finding that the allegedly libelous statements refer to a plaintiff." *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 805 (Fla. Dist. Ct. App. 1997); *Handelman v. Hustler Magazine, Inc.*, 469 F.Supp. 1048, 1050 (S.D.N.Y.1978); and *Anyanwu v. Columbia Broad. Sys., Inc.*, 887 F. Supp. 690, 692 (S.D.N.Y. 1995). In determining whether the "of and concerning" requirement has been sufficiently pleaded, the Court must consider whether those who know the plaintiff, upon reading the statements, would know that he was the target of the allegedly libelous statement. *Church of Scientology Intern. v. Time Warner Inc.*, 806 F.Supp. 1157, 1160 (S.D.N.Y.1992); A*nyanwu v. Columbia Broad. Sys., Inc.*, at 692. It is also true, however, that certain defamations of one person also defame another who may not be named particularly in the case of husband and wife. *Brewer v. Memphis Pub. Co.*, 626 F.2d 1238, 1244 (5th Cir. 1980). Likewise, the Florida courts have aligned with those jurisdictions which recognize that in order for a group defamation to be actionable by a member of that group when there is no specific reference, the group must be small enough for the defamation to be reasonably understood to refer to that member. *Adams v. WFTV, Inc.*, 691 So. 2d 557, 557 (Fla. Dist. Ct. App. 1997). In addition, Courts have also recognized that "[p]artners may maintain a joint action for libel or slander which tends to injure the business of their firm, even though the defamatory words refer to or concern but one of its members." *Melcher v. Beeler*, 48 Colo. 233, 246, 110 P. 181, 186 (1910). In Florida, the Supreme Court has stated that "a plaintiff has a claim for defamation if he or she suffers injury in his or her "personal, social, official, or business relations." *Land v. Tampa Times Publ'g Co.*, 68 Fla. 546, 67 So. 130, 130 (Fla.1914). *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1115 (Fla. 2008).

Plaintiffs, as husband and wife, fall into each of the above categories and would be able to claim to be members of a small group where the defamation of one can be reasonably understood to refer to the other member even when there is no specific reference to that member. In addition, their interests would be so intertwined that the injury, damages, harm inflicted to one of them, is equally suffered by the other through their personal relations. This

would not be inconsistent with *Rosenblatt v. Baer*, 383 U.S. 75 (1966), since that case dealt with a public official, which is distinguishable from the instant action.[4]

Finally, Defendants advantageously point to excerpts of the Amended Complaint containing statements that when show out of context seemed not to involve either Plaintiffs, but when seen as part of the whole publication are defamatory against Sanchez or Rodriguez. Defamation by implication arises, not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, such that he may be held responsible for the defamatory implication. *Jews for Jesus, Inc. v. Rapp* at 1106 (quoting *Stevens v. Iowa Newspapers, Inc.*, 728 N.W. 2d 823, 827 (Iowa 2007)). "[W]hile defamation law shields publishers from liability for minor factual inaccuracies, it also works in reverse, to impose liability upon the defendant who has the details right but the 'gist' wrong." *Readon v. WPLG, LLC*, No. 3D20-340, 2021 WL 1395240, at *4 (Fla. Dist. Ct. App. Apr. 14, 2021). "A classic example of defamation by implication was before the Second District in *Heekin v. CBS Broad., Inc.*, 789 So. 2d 355, 358 (Fla. 2d DCA 2001). In *Heekin*, the plaintiff alleged that a broadcast falsely portrayed him as a spouse abuser by juxtaposing an interview with his former spouse along with stories and pictures of women who had been abused and killed by their partners. *Heekin* at 357. Even though the reporting did not literally claim that the plaintiff was a spouse abuser, by overplaying his former wife's story with stories of spouse abuse, the reporting created the defamatory implication that the plaintiff had abused his spouse." *Readon v. WPLG, LLC* at *5. Defendants' stories regarding the Department of Health Assistant Secretary and Julia Keleher are also classic examples of defamation by implication.

The Amended Complaint unequivocally showed several instances where Defendants used seemly true statements to defame Plaintiffs. First, while Japhet Rivera sworn statement per se is not of and concerning Plaintiffs it was Fonseca under the auspices of the other

---

[4] The other cases are clearly distinguishable from Plaintiffs' action.  McIver v. Tallahassee Democrat, Inc., 489 So. 2d 793 (Fla. 1st DCA 1986) deals with an individual involved in a fraudulent practices' investigation and determined that an alleged defamatory statement identifying the individual as the president of the company, does not equate to an actionable claim by the legal entity unless the statement causes prejudice to the company.  The livelihoods and interests of a company officer and the legal entity are not comparable to the relationship between a husband and wife.  The Baker v. McDonald's Corp., 686 F. Supp 1474, case deals with a question of publication, particularly if there had been publication of a defamatory statement to other McDonald's employees; thus, it's not even relevant to the controversy.  Likewise, Miller v. Twentieth Century Fox Int'l Corp., 29 Med. L. Rep. 1087, 1091 (M.D. Fla. 2000), is also not applicable since it does not deal with multiple publications related to two intimately connected individuals, but instead with defamation regarding images taken in a public street.

Defendants, who forcibly brought up that said Whistleblower Complaint included allegations against Sanchez and Rodriguez. Something that was knowingly false to them and easily verifiable. (D.E 69 ¶ 29.). The same can be said about the statement that alleged that Rodriguez's unduly influence was the direct cause of the Puerto Rico Film Commissioner dismissal, specially when weeks earlier Telemundo published an article that stated that the Film Commissioner voluntarily resigned his position, detailing the reasons for his decisions, that had nothing to do with Plaintiffs. (D.E 69 ¶ 40.)

## IV.   STATEMENTS ARE DEFAMATORY

A communication to be defamatory need not tend to prejudice the other in the eyes of everyone in the community or of all of his associates, nor even in the eyes of a majority of them. It is enough that the communication would tend to prejudice him in the eyes of a substantial and respectable minority of them, and that it is made to one or more of them or in a manner that makes it proper to assume that it will reach them. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1114 (Fla. 2008). Whether a statement is susceptible to defamatory interpretation is a question of law left to the Court. See *Turner v. Wells*, 198 F. Supp. 3d 1355, 1365 (S.D. Fla. 2016). The inquiry turns on whether the "gist" of the publication is false. *Jews For Jesus, Inc. v. Rapp, 997 So.2d 1098, 1107-08 (Fla. 2008)* (explaining that liability attaches to a defendant who has the details right but the "gist" wrong). A court "must consider all the words used, not merely a particular phrase or sentence." *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (citation omitted). However, when a publication is "susceptible of two reasonable interpretations," one of which is defamatory, the issue becomes one of fact for the jury. *Turner v. Wells*, at 1269. "Where a communication is ambiguous and reasonably susceptible of a defamatory meaning, it is for the trier of fact to decide whether the communication was understood in the defamatory sense." *Perry v. Cosgrove*, 464 So.2d 664, 666 (Fla. 2d DCA 1985); *see* also  *Pep Boys v. New World Commc'ns of Tampa, Inc.,* 711 So.2d 1325, 1328 (Fla. 2d DCA 1998), ("The questions of whether the broadcast contained false statements and/or statements that could be interpreted as false are questions of fact which should be left for a jury to determine where the communication is ambiguous and is reasonably susceptible of a defamatory meaning."). *Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659–60 (Fla. Dist. Ct. App. 2019).

Defendants contend that the gist of the more than 99 statements at issue concern allegations of "influence peddling" related to Sanchez's lobbying business. Defendants point to examples where statements concerned Sanchez's alleged "strong influence" and describe Sanchez's "selling [of] influences" to procure government contracts for his clients. Defendants then attempt to argue that such type of statements do not naturally injure Sanchez's reputation and are not defamatory as a matter of law. The litany of cases cited by Defendants themselves clearly defeat their own interpretative arguments. Defendants define a defamatory statement as one that "exposes a person to distrust, hatred, contempt, ridicule or obloquy or which cases such person to be avoided, or which has a tendency to injure such person in his office, occupation, business or employment" (citations omitted). As usual, Defendants mischaracterize the holding in *Byrd*, 433 So. 2d at 595, which nowhere states that plaintiff's reputation must be injured in a material way. However, Defendants are correct when purporting that "[c]ontext is key in the analysis." It is shocking to read Defendants proposition that statements of "strong influence" and "selling of influences" are not defamatory as a matter of law, because Florida courts have held that the accusations of "influence peddling" are not defamatory based on *Seropian v. Forman,* 642 So. 2d 490 (Fla. 4th DCA 1995).

As clearly stated, context is key in any defamatory statement analysis. The *Seropian* court held that "**[i]n light of the facts of this case**, the term *influence peddling* is, as a matter of law, neither defamatory nor a falsehood." *Seropian v. Forman,* 642 So. 2d at 495. The analysis of the facts in *Seropian* was readily described by the Court: "[c]onsidering everything said in all three letters, the term does not impute conduct incompatible with the proper exercise of plaintiff's office, or tend to subject him to hatred, distrust, ridicule, contempt or disgrace. Given the entire context of the administrative proceeding and all the letters, the term is not obviously directed to plaintiff—it could equally be directed to the Clinic and its lobbyists—as, indeed, defendant testified." Id.

The *Seropian* case is wholly distinguishable from Plaintiffs', commencing with the statements themselves, which do not consist of "influence peddling". The Amended Complaint includes statements in which Defendants either jointly or separately accuse Sanchez and Rodriguez of illegally using their "strong influence" to benefit their clients. [See D.E. 69, Exhibits: I, K, L, R,V,W,Z and BB].  In fact, Defendants accused Sanchez without

any proof of being investigated by the federal authorities for "selling influences", and when so far as to stating that a sealed criminal indictment had been filed against Sanchez in Miami, Florida and that his arrest was imminent do to "said illegal practices". (D.E. 69 ¶ 50). The proposition by Defendants that such statements taken in the context of accusations of criminal behavior susceptible of investigation by federal authorities would not expose any individual to distrust, hatred, contempt and ridicule, or that the common mind would naturally understand the statements not to be defamatory, or that they could not reasonably have a defamatory or harmful effect are not just meritless, but beyond absurdity. It is well settled law in Florida that when a communication is ambiguous and reasonably susceptible of a defamatory meaning, it is for the trier of fact to decide whether the communication was understood in the defamatory sense.  This was indeed the case in *Seropian* where the court stated "[i]f influence peddling conveyed the obloquy that plaintiff suggests that fact should be readily understood by the ordinary jury without a political scientist swearing that it does." *Seropian v. Forman*, 652 So. 2d at 498.

Finally, the argument that statements identifying Sanchez as a "lobbyist" and generally describing Plaintiffs as "the Lobbying Family" are not defamatory, is just as baseless. Defendants do not cite any binding legal authority to support their conclusion. Plaintiffs have clearly pleaded that the gist of the publications containing those statements was to attach criminal behavior to their lawful and First-Amendment based rights. When viewed within the entire context of the publications and Defendants' continuous tort, those statements are clearly susceptible of two reasonable interpretations (one being Defendant's interpretation), one of which is defamatory (the one contended by Plaintiffs), the issue becomes one of fact for the jury.

## V.    STATEMENTS ARE NOT CONSTITUTIONALLY PROTECTED RHETORICAL HYPERBOLE OR OPINION

Where there is rhetorical hyperbole, the language itself "negate[s] the impression that the writer was seriously maintaining that [the plaintiff] committed the [act described]." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21, 110 S.Ct. 2695; *Presley v. Graham*, 936 F. Supp. 2d 1316, 1325 (M.D. Ala. 2013). The *Milkovich* Court also refused "to create a wholesale defamation exemption for anything that might be labeled 'opinion,'" reasoning that an expression of opinion also may imply knowledge of facts. *Id.* at 18, 110 S.Ct. 2695; *Presley v.*

*Graham*, 936 F. Supp. 2d at 1325. "In determining whether an allegedly defamatory statement is an expression of fact or an expression of pure opinion and/or rhetorical hyperbole, context is paramount." *Fortson v. Colangelo*, 434 F.Supp.2d 1369, 1379 (S.D.Fla.2006); *see also From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. 1st DCA 1981) ("[T]he test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality and the context in which it was uttered or published."); *LRX, Inc. v. Horizon Associates Joint Venture ex rel. Horizon–ANF, Inc.*, 842 So.2d 881, 885 (Fla. 4th DCA 2003). Once again, context is key in the analysis.

It is for the court to decide, as a matter of law, whether they complained of words are actionable expressions of fact or non-actionable expressions of pure opinion and/or rhetorical hyperbole. *See Colodny v. Iverson, Yoakum, Papiano & Hatch,* 936 F. Supp. 917, 923 (M.D. Fla. 1996) ("[W]hether the alleged defamatory word is a[ ] non-actionable expression of pure opinion or an actionable expression of pure fact . . . is a question of law for the Court.") (citing Florida cases). "In determining whether an allegedly defamatory statement is an expression of fact or an expression of pure opinion and/or rhetorical hyperbole, context is paramount." *Fortson,* 434 F. Supp. 2d at 1379; *see also From v. Tallahassee Democrat, Inc.,* 400 So. 2d 52, 57 (Fla. 1st DCA 1981) ("[T]he test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality and the context in which it was uttered or published."); *LRX, Inc. v. Horizon Associates Joint Venture ex rel. Horizon-ANF, Inc.,* 842 So. 2d 881, 885 (Fla. 4th DCA 2003) ("One looks to the totality of the statement, the context in which it was published, and the words used to determine whether the statement is pure or mixed opinion."); *Spears v. Albertson's, Inc.,* 848 So. 2d 1176, 1178 (Fla. 1st DCA 2003) ("A determination of whether these words constitute slander must be made by considering the context in which the words were spoken.").

In view of context and language, we must emphasize that one of Defendants' television shows, *Jay y sus Rayos X* (translated: Jay and his X Rays), is advertised as an investigative journalism program, where correspondents are labeled as journalists, and due to the "investigative" nuance, Defendants have created the illusion in the audience's minds that the contents of the show are even more rigorous than those of a traditional newscast. Moreover, Fonseca avails himself constantly of the phrases in the like of "esta no es mi

opinion, los datos son los datos" (translation: "this is not my opinion, the facts are the facts,") with the distinct intention of convincing and influencing the average media-consumer to believe that his statements are indeed truthful facts. Telemundo PR, NBCUniversal, Telemundo Network, and TM Television concede and included multiple instances of Fonseca uttering his coined phrase that facts are facts and not his opinion, and the like, in the Composite Exhibits attached to their Motion:

Composite Exhibit 13 [D.E. 69-10] – "**The following information is not my opinion**, **these are the facts** because there are people that do not like my opinion, that is fine. You can be against my opinion and it is totally valid that you do not like it, you do not like my friends, you do not like my relationships, or whatever. That is fine. **But facts are facts**, right? Two plus two equals four even if a crazy person says it, right? **Prove me wrong, prove me wrong**!"…

Composite Exhibit 10 [D.E. 69-7] – "**That is not my opinion**, **those are the facts**, governor. **The facts are the facts**, and you can fight all you want with them."

Composite Exhibit 14 [D.E. 69-11] – "**These are the facts** and we brought them to light a year ago".

Composite Exhibit 11 [D.E. – 69-8] – "[I]t is the complicit relationship between Elias Sanchez, the governor and the work team closest to him, of someone who is **here already demonstrated what we all knew**, that Elias Sanchez would continually fight with agency heads when they did not give his clients the contracts".

### d) Questions can be defamatory

The critical consideration in any defamation case under Florida law is the "gist or sting" of the challenged statements. *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1240 (11th Cir. 1999); Berisha v. Lawson, 378 F. Supp. 3d 1145, 1162 (S.D. Fla. 2018), aff'd, 973 F.3d 1304 (11th Cir. 2020). Defendants cite *Chapin v. Knight-Ridder, Inc.*, to support their argument that questions are not actionable and state that "inquiry itself, however embarrassing or unpleasant to its subject, is not an accusation. 993 F.2d 1087, 1094 (4th Cir. 1993). However, once more, they fail to accurately depict the case law because it does not stand for their propositions. *Chapin* actually holds that "[a] **question can conceivably be defamatory**, though it must be reasonably read as an assertion of a false fact; inquiry itself, however embarrassing or unpleasant to its subject, is not accusation." 993 F.2d at 1094; *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995).

In *Point Ruston*, Defendants argued that their use of a "?" on many of their statements was evidence that they are merely expressing a rhetorical question and leaving interpretation

to the reader. In ruling against Defendants, the Court found that "[c]onsidering the entire record in this case and the context in which the challenged statements were made, the Court concludes *Point Ruston* has sufficiently supported their contention that many of the statements made by the Carpenters are properly the subject of their defamation action. That is, they may be provably false, may be objectively verifiable facts, and may have been made with actual malice." *Point Ruston, LLC v. Pac. Nw. Reg'l Council of the United Bhd. of Carpenters & Joiners of Am.*, No. C09-5232BHS, 2010 WL 3732984, at *8 (W.D. Wash. Sept. 13, 2010).

Thus, the threshold question in defamation suits is "whether a reasonable factfinder could conclude that the statement impl[ies] an assertion of objective fact." *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir.1990) (quotation and citation signals omitted); *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 21, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (noting that the "dispositive question" is whether a "reasonable factfinder" could conclude the alleged defamatory statements imply an assertion of fact). As in the *Point Ruston* case, it is Plaintiffs assertion that upon consideration of the entire record and the context in which the challenged statements were made, and the gist or sting of the publications, the factfinder or jury will find the questions, included as part of the defamatory publications, to be provably false, objectively verifiable facts, and having been made with actual malice.

### e) The July 17, 2019 publications are not privileged

Florida courts recognize that "a republisher may rely on the research of the original publisher, 'absent a showing that the republisher had, or should have had, substantial reasons to question the accuracy of the articles or the bona fides of the reporter.' " *Nix v. ESPN, Inc.*, No. 1:18-CV-22208-UU, 2018 WL 8802885, at *6 (S.D. Fla. Aug. 30, 2018). In addition, **"[w]here the facts are not in dispute in defamation cases**, ... pretrial dispositions are 'especially appropriate' because of the chilling effect these cases have on freedom of speech." (emphasis added). *Stewart v. Sun Sentinel Co.,* 695 So. 2d 360, 363 (Fla. 4th DCA 1997). *Marder v. TEGNA Inc.*, No. 19-81283-CIV, 2020 WL 3496447, at *3 (S.D. Fla. June 29, 2020).

Plaintiffs raised sufficient facts in their pleading that charge a direct factual dispute with Defendants' Motion.  Plaintiffs contend that the wire service defense cannot be available to Defendants because Fonseca admitted to having doubts about the allegations and the July 17, 2019 Story on its face indicates multiples reason to doubt its veracity. For example, the Story describes a main scheme headed by Sanchez that had some type of connection with the

scheme uncovered with the arrests made by the Federal Prosecutor in July at the Department of Education, the Health Insurance Administration (ASES) and the BDO accounting firm. However, the journalists contradict themselves by stating that "Last week Keleher was also indicted by the feds in a scheme - so far unrelated - where BDO, Scherrer and Velázquez were also protagonists." On both Complaints, Plaintiffs argue that in such republications, Defendants acted with the required degree of actual malice to overcome any protections under the wire service defense or other constitutional privileges. The pleaded facts are sufficient to raise a factual dispute that requires denial of Defendants' Motion to allow Plaintiffs to conduct discovery to prove their allegations.

## **CONCLUSION**

Defendants' position is that Plaintiffs "indiscriminately lumps all defendants together", therefore failing to comply with Rule 8 and Rule 10(b). Defendants' argument that Plaintiffs failed to identify which statement was made by which Defendant was resolved by the amendment of the complaint, as stated above.

Plaintiffs Amended Complaint states a plausible claim for relief. Therefore, Plaintiffs request that this Court deny Defendants Motion to Dismiss in its entirety.

Dated: January 10, 2022

Respectfully submitted,

By: *Luis F. Navarro*
    Luis F. Navarro, Esq.
    Florida Bar No.: 629359
    Lorenzo J. Palomares, Esq.
    Florida Bar No.: 100785
    **NAVARRO**
    ***Attorneys at Law***
    *Counsel for Plaintiffs*
    66 W. Flagler Street, 6th Floor
    Miami, Florida 33130
    Tel: (305) 447-8707
    Fax: (305) 447-3787
    civil@nmbesq.com,
    lou@nmbesq.com
    Palolaw2@gmail.com
    mromo@nmbesq.com

## CERTIFICATE OF COMPLIANCE WITH ORDER OF REFERRAL [DE 18]

I HEREBY certify that counsel for the movant has conferred with all parties or non-parties before filing this opposition to Defendant's Motion to Dismiss in a good faith effort to resolve the issues but have been unable to resolve the issues

By: */s/ Luis F. Navarro*
Luis F. Navarro, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on January 10, 2022, on al counsel or parties of record on the Service List below.

Rachel R. Fugate, Esq.
Deanna K. Shullman, Esq.
Giselle M. Girones, Esq.
Shullman Fugate, PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, Florida 33411
dshullman@shullmanfugate.com
rfugate@shullmanfugate.com
ggirones@shullmanfugate.com
*Counsel for Defendants*

By: */s/ Luis F. Navarro*
Luis F. Navarro, Esq.