UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-20543-COOKE/DAMIAN

ELIAS SANCHEZ SIFONTE and
VALERIE RODRIGUEZ ERAZO,

      Plaintiffs,

vs.

JOSUE FONSECA, *et al.*,

      Defendants.

_____/

**REPORT AND RECOMMENDATION ON
DEFENDANT TM TELEVISION INC.'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION OR TO TRANSFER [ECF NO. 73]
AND CERTAIN DEFENDANTS' MOTION TO DISMISS AND
JOINDER IN MOTION TO TRANSFER [ECF NO. 74]**

THIS CAUSE is before the Court on Defendant TM Television, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer ("TM Television's Motion"), filed December 17, 2021 [ECF No. 73], and Defendants Telemundo of Puerto Rico LLC, NBCUniversal Media, LLC, Telemundo Network Group LLC, Antonio Mojena, Josue "Jay" Fonseca, and Jagual Media LLC (collectively, "Certain Defendants") Motion to Dismiss and Joinder in TM Television's Motion to Transfer Venue ("Certain Defendants' Motion"), filed December 17, 2021. [ECF No. 74]. The Motions were referred to the undersigned by the Honorable Marcia G. Cooke, United States District Judge, for a Report and Recommendation. [ECF No. 87]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the parties' memoranda [ECF Nos. 78, 79, 84, and 85], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. The undersigned also heard from the parties, through counsel, at a Zoom Motion Hearing held on August 10, 2022. [ECF No. 104].

For the reasons that follow, it is recommended that TM Television's Motion to Dismiss for Lack of Personal Jurisdiction or To Transfer [ECF No. 73] and the Certain Defendants' Motion to Dismiss and Joinder in the Motion to Transfer [ECF No. 74] be granted in part and denied in part and that this action be transferred to the United States District Court for the District of Puerto Rico for further proceedings.

## I.     BACKGROUND

### A. *Factual Background*

This is a $35 million action for defamation, slander *per se*, and libel arising from a series of news reporting shows produced, broadcasted, and published in Puerto Rico concerning alleged "scandalous rumors and fabrications" about Plaintiffs, Elias Sánchez Sifonte ("Mr. Sánchez") and his wife, Valerie Rodríguez Erazo ("Mrs. Rodríguez") (collectively, "Plaintiffs"). [ECF No. 69 ("Am. Compl.") at ¶¶ 1–6]. The following factual allegations are taken from the Amended Complaint, the parties' briefing on the pending motions, and the declarations and affidavits in the record.

### 1.   The Parties

Mr. Sánchez is a former resident and citizen of Puerto Rico who worked as an attorney, business consultant, and lobbyist in Puerto Rico. *Id.* at ¶ 7. He was the former Campaign Manager and Chairman of the transition team of the former Governor of Puerto Rico, Ricardo Rosselló, who assumed office in 2017. *Id.* Mr. Sánchez alleges that from

January 2017 through his resignation in July 2017, he was an unpaid, non-voting, ex-officio member of the Puerto Rico Financial Oversight and Management Board ("FOMB") on which he served solely as the Governor's representative. *Id.* Mr. Sánchez's wife, Mrs. Rodríguez, is a practicing attorney and a member in good standing of the state bar in Puerto Rico and is admitted to practice in the District of Puerto Rico. *Id.* at ¶ 8. Mrs. Rodríguez held a public position in the government of Puerto Rico once during the years 2009 and 2010 as a special aide to the Executive Director of a public corporation. *Id.* Plaintiffs allege they have resided in the State of Florida since June 2019. *Id.* at ¶ 6. [*See also* ECF No. 79, at 6].

Defendant Josue "Jay" Fonseca ("Mr. Fonseca") is a lawyer, journalist, commentator, and influencer based in Puerto Rico. *Id.* at ¶ 10. In his Declaration, Mr. Fonseca states that he lives and works in Puerto Rico and authors content for and appears in several programs, including *Jay y Sus Rayos X*, *Día a Día*, and a segment on *Telenoticias* (collectively, the "Shows"), on Telemundo of Puerto Rico LLC's local television station, WKAQ-TV, and its website, http://www.telemundopr.com ("TelemundoPR website"). [ECF No. 36 ("Fonseca Decl.") at ¶ 3; *see also* Am. Compl. at ¶ 18]. Mr. Fonseca also publishes news and other broadcasts on his Facebook, Instagram, and Twitter social media accounts. Fonseca Decl. at ¶ 3. Additionally, he is the sole owner and member of Defendant Jagual Media, LLC ("Jagual Media"), a Puerto Rico limited liability company. *Id.* at ¶ 2; Am. Compl. at ¶ 11.

Defendant Telemundo of Puerto Rico, LLC ("Telemundo of Puerto Rico") is a Puerto Rico limited liability company. Am. Compl. at ¶ 9. It operates the WKAQ-TV station in Puerto Rico, the domain name for the TelemundoPR website, and the Telemundo of Puerto Rico social media accounts. [ECF No. 35, at ¶ 3]. Telemundo of Puerto Rico is the publisher of the Shows containing the alleged defamatory statements about Plaintiffs that aired on the

WKAQ-TV local station in Puerto Rico and the online versions of the broadcasts that appeared on the TelemundoPR website. *Id.* at ¶ 5.

Defendant TM Television, Inc. ("TM Television") is a Puerto Rico corporation with its sole office in Puerto Rico. Am. Compl. at ¶ 14. Defendant Antonio Mojena ("Mr. Mojena") is the sole owner and shareholder of TM Television. *Id.* [*See also* ECF No. 32 [Mojena Decl. at ¶ 2]. TM Television produces two of the Shows featuring Mr. Fonseca— *Día a Día* and *Jay y Sus Rayos X*—as well as other content. Mojena Decl. at ¶ 4. According to Mr. Mojena, TM Television has an exclusive relationship with Telemundo of Puerto Rico in which Telemundo of Puerto Rico films the Shows and provides the raw footage to TM Television for editing and then Telemundo of Puerto Rico broadcasts the Shows in its sole discretion. *Id.* at ¶¶ 4–5. Both the filming and production of the Shows occurred in Puerto Rico. *Id.* at ¶ 5. TM Television's employees live and work in Puerto Rico and do not perform any work for TM Television in Florida. *Id.* at ¶ 3.

Defendant NBCUniversal Media, LLC, ("NBCUniversal Media") is a Delaware limited liability company and is the parent company of Telemundo of Puerto Rico. Am. Compl. at ¶ 12. [*See also* ECF No. 38, at ¶ 4]. Defendant Telemundo Network Group, LLC, ("Telemundo Network Group") is also a Delaware limited liability company. Am. Compl. at ¶ 13. According to the Declaration of Vanessa Pombo, the Vice President of Production Management and Business News for Telemundo Noticias, the news division of Telemundo Network Group, Telemundo Network Group creates network news shows focusing on national events that are distributed to the Telemundo-branded stations. [ECF No. 41, at ¶ 3]. Ms. Pombo avers that Telemundo Network Group did not create, publish, or distribute any of the publications at issue in this action. *Id.* at ¶ 5.

4

### 2. The Allegations

As indicated above, the lawsuit involves allegations of defamation, libel, and slander. The issues now before the Court concern whether the Court has personal jurisdiction over TM Television and whether this case should be transferred to the District Court for the District of Puerto Rico. Thus, the undersigned focuses on factual allegations relevant to these issues. To better understand the defamation claims alleged by Plaintiffs, the allegations need to be placed within the context of the relevant political happenings in Puerto Rico.

In July 2019, a political scandal dubbed "Telegramgate" made headlines in Puerto Rico with the leak of hundreds of pages of private group chat messages between then-Governor Rosselló and several members of his cabinet and other individuals, including Mr. Sánchez. [ECF No. 73, at 2]. Many of the leaked messages were vulgar and offensive in nature and led to major protests in Puerto Rico and, ultimately, the resignation of Governor Rosselló. *Id.* During that time, news and media outlets in Puerto Rico began incessantly reporting on the Telegramgate scandal and about the persons involved. Some of the broadcasts challenged by Plaintiffs in this action were aired around the same time as the Telegramgate scandal, including:

- *Telenoticias* July 12, 2019 Broadcast titled, "*El Gobernardor ha dicho una sarta de mentiras*" (Translated as: "*The Governor has told a pack of lies*"), in which Mr. Fonseca allegedly implied that Mr. Sánchez's appointment as director of Governor Rosselló's transition team and Mr. Sánchez's appointment to the FOMB were irregular and intended to give Mr. Sánchez access to information that would benefit Mr. Sánchez's clients with government contracts in Puerto Rico [*See* Am. Compl. at ¶¶ 68–71];

- *Jay y Sus Rayos X* July 16, 2019 Broadcast titled, "*Investigacion destapa supuesto esquema en Salud*" (Translated as: "Investigation uncovers supposed scheme in [Puerto Rico's Department of] Health"), in which Plaintiffs are allegedly charged with exerting undue influence over the affairs of the Puerto Rico Department of Health [*See* Am. Compl. at ¶¶ 27–30];

5

- *Día a Día* July 18, 2019 Broadcast titled, "*De Frente con Jay*" (Translated as: "*Head to head with Jay*") in which Mr. Sánchez is allegedly charged with setting up a pay-for-play scheme with former Governor Rossello to pay Mr. Sánchez a salary during the campaign period for future benefits under Rosselló's government administration [*See* Am. Compl. at ¶¶ 80–83];

- *Jay y Sus Rayos X* July 24, 2019 Broadcast titled, "*Manuel Natal desmenuza vinculos entre Elías y Rosellό*" (Translated as, "*Manuel Natal breaks down links between Elías and Rosellό*"), in which Mr. Fonseca interviews Manuel Natal, a Puerto Rico attorney, who conducted an investigation about the alleged business relationship and dealings between Mr. Sánchez and Governor Rossello [*See* Am. Compl. at ¶¶ 84–90; and

- *Día a Día* August 12, 2019 Broadcast titled, "*¿Julia Keleher enviaba informacion confidencial a Elías Sánchez?*" (Translated as: "*Julia Keleher sent confidential information to Elías Sánchez?*"), in which Mr. Fonseca allegedly implied that Puerto Rico's former Secretary of Education, Julia Keheler, who was indicted on federal corruption charges, had sent emails and confidential information to Mr. Sánchez for nefarious reasons [*See* Am. Compl. at ¶¶ 116–121].

[*See also* ECF No. 34 – Certified translations of the broadcasts].

In their 137-page Amended Complaint, Plaintiffs allege Mr. Fonseca published numerous false and inflammatory statements and fabricated scandalous news stories about Plaintiffs, including those described above, which were produced and broadcasted on several television news programs by the remaining Defendants in Puerto Rico and published online through various social media outlets. Am. Compl. at ¶¶ 18–24. Specifically, Plaintiffs allege that Defendants "treated Sanchez as public-enemy-number-one in their Broadcasts, portraying Sanchez as the head and mastermind of a criminal enterprise or *mafia* . . . and portraying both Sanchez and Rodriguez as part of 'The Lobbying Family.'" Am. Compl. at ¶ 4.

In the Amended Complaint, Plaintiffs allege that each Defendant played a specific role in the creation, production, or publication of the defamatory statements against them. Plaintiffs allege that Telemundo of Puerto Rico broadcasted the Shows which contained

defamatory and false statements about Plaintiffs. *Id.* at ¶ 138. Plaintiffs claim that Mr. Fonseca streamed, Internet-posted, and broadcasted "news" and commentary stories which contained the defamatory and libelous statements about Plaintiffs in writing and the slanderous statements in video segments broadcasted on the Telemundo-branded Shows. *Id.* at ¶ 139. NBCUniversal Media registered, administered, and technologically managed the domain name for the TelemundoPR website where the defamatory statements about Plaintiffs were published. *Id.* at ¶ 140. NBCUniversal Media also operates and owns the streaming and live programming application that simultaneously broadcasts all of the Telemundo of Puerto Rico programming, including the Shows which contained the defamatory statements about Plaintiffs. *Id.* Plaintiffs allege that Telemundo of Puerto Rico filmed and broadcasted two of the Shows featuring Mr. Fonseca. *Id.* at ¶ 141. Plaintiffs allege TM Television created and produced the Shows that were broadcasted throughout Puerto Rico. *Id.* at ¶ 142.

Plaintiffs allege that the broadcasts were also available for viewing in the Southern District of Florida. *See* Declaration of Mildred Yapor [ECF No. 49]. They also allege that many of the defamatory publications and content are still accessible, including to individuals in the Southern District of Florida. As a result of the alleged defamatory conduct, Plaintiffs claim they suffered "grave embarrassment, ridicule and humiliation." Am. Compl. at ¶ 6. Mr. Sánchez alleges that he lost his job and clients and endured death threats against himself, his wife, and their minor children. *Id.* Additionally, Plaintiffs "lost the high regard and trust they previously had" and they "suffered enormous damage to their professional reputation and standard and to their income-earning ability in their chosen professions." *Id.* at ¶ 5. Plaintiffs also allege that they moved from Puerto Rico to the Southern District of Florida some time in or around June 2019. *Id.* at ¶ 6.

Based upon these allegations, Plaintiffs assert twenty counts for defamation based on the individual broadcasts against most, if not all, of the Defendants (Counts I–XX);[1] one count of slander *per se* against Defendants Telemundo of Puerto Rico, NBCUniversal Media, and Telemundo Network Group (Count XXI); and three individual counts for libel against Defendants Fonseca, Jagual Media, Telemundo of Puerto Rico, NBCUniversal Media, and Telemundo Network Group (Counts XXII–XXIV).

Plaintiffs seek compensatory damages in the sum of $5 million dollars for the alleged harm to their reputations; consequential damages in the sum of $30 million dollars for the alleged harm to their respective business and property; and punitive damages. *Id.* at ¶ 380.

### B. *Procedural Background*

Plaintiffs originally filed this action in the Eleventh Judicial Circuit Court in and for Miami-Dade County on December 31, 2020. [ECF No. 1-2]. In their state court Complaint, Plaintiffs sued Mr. Fonseca, Telemundo International Studios, LLC, Telemundo Intenacional, LLC a/k/a Telemundo De Puerto Rico, LLC, Jagual Media, TM Television, TM Entertainment, Inc., and Does 1-10. On February 9, 2021, the original defendants removed the state court action to this Court based on diversity of citizenship (28 U.S.C. § 1332). [ECF No. 1].

On February 26, 2021, Plaintiffs filed a proposed First Amended Complaint. [ECF No. 16]. In the proposed pleading, Plaintiffs sought to name Mr. Fonseca, Telemundo of Puerto Rico, NBCUniversal Media, Jagual Media, Telemundo Network Group, TM Television, Mr. Mojena, Jose Cancela, Manuel Martinez, individual Does 1-7, and XYZ

---

[1] The Amended Complaint misnumbers Counts XVIII through XXIV. *See* Am. Compl. at ¶¶ 325–375.

entities 1-10 as defendants in this action. *Id.* On March 11, 2021, Plaintiffs dismissed without prejudice Telemundo International Studios, LLC, Telemundo Studios, LLC, and TM Entertainment, Inc. [ECF No. 22].

On September 29, 2021, the Court denied Plaintiffs' motion to remand this action to state court and denied Plaintiffs' requested joinder of Jose Cancela and Manuel Martinez on grounds Plaintiffs attempted to destroy diversity by adding two non-diverse defendants, Messrs. Cancela and Martinez, after the action was removed and without seeking leave of court. [ECF No. 64].

On November 1, 2021, the Court found the state court Complaint that was removed to this Court was the operative pleading and that the remaining Defendants had timely responded by filing their respective motions to dismiss. [ECF No. 66]. The Court entered a separate Order granting in part Defendants' motions to dismiss the Complaint because it was a shotgun pleading and ordered Plaintiffs to file an amended complaint. [ECF No. 67].

On November 23, 2021, Plaintiffs filed their Amended Complaint, now the operative pleading in this action, against Mr. Fonseca, Telemundo of Puerto Rico, NBCUniversal Media, Jagual Media, Telemundo Network Group, TM Television, and Mr. Mojena (collectively, "Defendants"). [ECF No. 69].

Defendant TM Television now seeks dismissal of the Amended Complaint for lack of personal jurisdiction over it pursuant to Federal Rule of Civil Procedure 12(b)(2). [ECF No. 73]. In the alternative to dismissal, TM Television requests that this action be transferred to the District of Puerto Rico pursuant to Title 28, United States Code, Section 1404(a). *Id.* Defendants Telemundo of Puerto Rico, NBCUniversal Media, Telemundo Network Group,

Mr. Mojena, Mr. Fonseca, and Jagual Media all joined in the request to transfer the action to the District of Puerto Rico. [ECF No. 74].

Plaintiffs oppose the dismissal and transfer. [ECF No. 79]. These issues are fully briefed and ripe for disposition. On August 10, 2022, the parties appeared before the undersigned for a hearing on the pending Motions. [ECF No. 104].

## II.    APPLICABLE LEGAL STANDARDS

### A. *Personal Jurisdiction*

"A court must dismiss an action against a defendant over which it has no personal jurisdiction." *S.O.S. Res. Servs., Inc. v. Bowers*, No. 14-22789-Civ, 2015 WL 2415332, at *2 (S.D. Fla. May 21, 2015) (Cooke, J.) (quoting *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323–24 (M.D. Fla. 2011)). Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2).

The Eleventh Circuit has explained that a nonresident defendant may be subject to personal jurisdiction under Florida's long-arm statute in one of two ways:

> First, a defendant is subject to 'specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida'—for conduct specifically enumerated in the statute. Second, a defendant is subject to 'general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida.'

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (citing *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015)); *see also* Fla. Stat. § 48.193(1)(a) and (2).

To survive a motion to dismiss, a plaintiff must plead sufficient facts to establish a *prima facie* case of jurisdiction over a nonresident defendant. *Virgin Health Corp. v. Virgin Enters.*

*Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). In other words, "[t]he plaintiff bears the initial burden of alleging sufficient jurisdictional facts to make a *prima facie* case; if the defendant rebuts with contrary affidavit evidence, the plaintiff reassumes the burden." *Id.* (citing *United Techs. Corp v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). The plaintiff establishes a *prima facie* case if it "presents enough evidence to withstand a motion for directed verdict." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (citation omitted).

A federal court sitting in diversity undertakes a two-step inquiry to determine whether personal jurisdiction exists. *Waite*, 901 F.3d at 1312. First, the Court determines whether the exercise of jurisdiction comports with the long-arm statute of the forum state (which defines the exercise of personal jurisdiction under state law). *Id.* Second, the Court determines whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See id.*; *see also* Fed. R. Civ. P. 4(k)(1)(A); *Mazer*, 556 F.3d at 1274. The reach of the Florida long-arm statute is a question of Florida law; therefore, federal courts construe the long-arm statute as they believe the Florida Supreme Court would. *Mazer*, 556 F.3d at 1274. In the absence of authority from the Florida Supreme Court, federal courts look to the Florida district courts of appeal. *Id.* at 1274–75 (citation omitted).

At this stage, the Court accepts the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp.*, 216 F.3d at 1291. If the defendant refutes personal jurisdiction by sustaining its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The

Court construes all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting evidence. *See PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010) ("If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists."); *see also Consol. Dev. Corp.*, 216 F.3d at 1291.

If the nonresident defendant is found to be subject to specific or general jurisdiction under Section 48.193(1)(a) or (2), the Court next determines whether the exercise of personal jurisdiction comports with due process. *Id.* The benchmark of this analysis is whether the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The minimum contacts inquiry focuses on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). This inquiry ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the "random, fortuitous, or attenuated" contacts it makes by interacting with other persons affiliated with the state. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

**B.  *Transfer Of Venue***

Title 28, United States Code, Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A court that lacks personal jurisdiction over a defendant may transfer the case under section 1404(a) rather than dismiss.

*Bernsley v. Advance Grp.*, No. 21-cv-62312, 2022 WL 2915741, *6 (S.D. Fla. July 24, 2022) (Ruiz, J.) (citing cases).

To determine the propriety of transfer to a different district, courts engage in a two-step analysis under section 1404(a). First, courts determine whether the action could have been brought in the venue in which transfer is sought. Second, courts assess whether convenience and the interest of justice require transfer to the requested forum. *Osgood v. Discount Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1264 (S.D. Fla. 2013) (Marra, J.).

"Courts have broad discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Game Controller Tech. LLC v. Sony Comput. Ent. Am. LLC*, 994 F. Supp. 2d 1268, 1271 (S.D. Fla. 2014) (Altonaga, J.) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Courts consider several factors in determining whether transfer is appropriate, including:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Game Controller Tech.*, 994 F. Supp. 2d at 1272 (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135, n.1 (11th Cir. 2005)).

The movant has a high burden to show that the requested transfer is warranted because a plaintiff's choice of forum "should not be disturbed unless it is clearly outweighed by other considerations." *Id.* (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)); *see also Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1359 (S.D.

Fla. 2001) (Moore, J.) ("Transfer can only be granted where the balance of convenience of the parties *strongly favors* the defendant." (citations omitted)).

### III.   DISCUSSION

With the foregoing in mind, the undersigned first considers whether Plaintiffs have demonstrated that TM Television is subject to personal jurisdiction in this Court.

In the Amended Complaint, Plaintiffs allege that the Court has personal jurisdiction over all of the Defendants, including TM Television, pursuant to sections 48.193(1)(a)(1), (a)(2), and (a)(6) of Florida's long-arm statute. Am. Compl. at ¶ 17. In their Response, however, Plaintiffs only argue that specific jurisdiction is appropriate because TM Television committed a tortious act of defamation within Florida. Resp. at 4. Plaintiffs do not cite a provision of Florida's long-arm statute to support general jurisdiction over TM Television in either the Amended Complaint or the Response. Therefore, the limited question presented is whether TM Television is subject to specific jurisdiction. In any event, the undersigned finds that this Court lacks both general and specific jurisdiction over TM Television in this action.

### A.   *The Court Lacks General Jurisdiction Under Florida's Long-Arm Statute*

Again, although not pursued by Plaintiffs, the undersigned briefly addresses the lack of general jurisdiction. Under the general jurisdiction provision of Florida's long-arm statute, a court has jurisdiction over a "defendant who is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Such activity can be "wholly interstate, intrastate, or otherwise." *Id.* Florida courts have defined the term "substantial and not isolated activity" as used in section 48.193(2) to mean "continuous and systematic general business contact" with Florida. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d

14

617, 620 (Fla. 4th DCA 1999); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)). Generally, the contacts required to establish general jurisdiction are quite rigorous and "must be especially pervasive and substantial" to satisfy Section 48.193(2). *In re Farmland Indus., Inc.*, No. 3:05–CV–587, 2007 WL 7694308, at *3 (M.D. Fla. Mar. 30, 2007).

Therefore, the exercise of general jurisdiction is only proper when the nonresident defendant's contacts with Florida are "so continuous and systematic as to render [the defendant] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citations omitted). Additionally, "a corporation's continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Id.* at 132 (citations omitted).

As noted above, Plaintiffs do not allege facts supporting general jurisdiction over TM Television and do not offer a basis for the exercise of such jurisdiction in their Response. In the Amended Complaint, Plaintiffs allege that TM Television is a "corporation organized under the laws of Puerto Rico, whose place of business [is] in Puerto Rico." Am. Compl. at ¶ 14. Moreover, the Declaration of Antonio Mojena, the sole owner and shareholder of TM Television, submitted in support of TM Television's Motion, states that TM Television's sole office is located in Puerto Rico and that its employees live and work in Puerto Rico and that they do not perform any work for TM Television in Florida. [ECF No. 32 at ¶ 3]. Additionally, Mr. Mojena avers that TM Television (1) does not do business with any Florida persons or entities; (2) does not have any property (owned or leased) in Florida or bank accounts in Florida; (3) is not registered to do business in Florida and does not have a registered agent in Florida; and (4) receives no income from Florida sources. *Id.* at ¶¶ 9–11. Plaintiffs did not provide affidavits, testimony, or documents to rebut these statements. *See*

*Moale v. Tonno Ltd.*, No. 19-25114, 2020 WL 13389755, at *2 (S.D. Fla. Nov. 30, 2020) (Cooke, J.) (citing *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009)). Thus, the Amended Complaint fails to allege sufficient facts to demonstrate that TM Television's contacts, if any, with Florida are so pervasive and substantial as to render it essentially at home in Florida, and thus, amenable to suit in this action, and Plaintiffs failed to rebut TM Television's evidence to the contrary. *See Bowers*, 2015 WL 2415332, at *3.

Accordingly, the undersigned finds that Plaintiffs have not demonstrated that this Court may exercise personal jurisdiction over TM Television under the general jurisdiction provision of Florida's long-arm statute, Section 48.193(2).

**B.    *The Court Lacks Specific Jurisdiction Under Florida's Long-Arm Statute***

The undersigned next considers whether Plaintiffs have established that TM Television is subject to specific jurisdiction.  The Court may exercise specific jurisdiction over a non-resident defendant if the exercise of jurisdiction comports with: (1) the relevant state long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment.

**1.    Florida's Long-Arm Statute**

Section 48.193(1)(a) of Florida's long-arm statute permits personal jurisdiction over a nonresident defendant for any cause of action arising from any one of nine enumerated acts set forth in the Statute. Fla. Stat. § 48.193(1)(a); *see also Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 548 (11th Cir. 2019) (noting, under the specific jurisdiction provision of the Florida long-arm statute, a defendant is subject to jurisdiction for causes of action arising out of one or more of nine enumerated Florida-connected acts).

In the Amended Complaint, Plaintiffs' main allegation in support this Court's jurisdiction over TM Television, as well as the remaining Defendants who do not contest the Court's exercise of jurisdiction over them in this action, provides:

> This Court has personal jurisdiction over all defendants under sections 48.193 (1) (a) (1), 48.193 (1) (a) (2), 48.193 (1) (a)(6), Florida Statutes and 28 U.S.C. § 1391 because actions subject to this Complaint occurred while Plaintiffs were residents in [sic] the State of Florida and Defendants benefitted from or engaged in commerce within this state.

Am. Compl. at ¶ 17. In response to TM Television's Motion, Plaintiffs argue that TM Television is subject to specific jurisdiction because TM Television "committed a tortious act of defamation in Florida, because it published defamatory statements about Florida residents that are available in Florida and were actually accessed by third party residents in Florida." Resp. at 4.

### a.  *The Amended Complaint Does Not Allege That TM Television Posted The Defamatory Statements*

The Florida Supreme Court has instructed that a nonresident defendant "commits the tortious act of defamation in Florida for purposes of Florida's long-arm statute when the nonresident makes allegedly defamatory statements about a Florida resident by posting those statements on a website, provided that the website posts containing the statements are accessible in Florida and accessed in Florida." *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010); *see also Internet Sols. Corp. v. Marshall*, 611 F.3d 1368, 1370 (11th Cir. 2010) (adopting standard set forth by the Florida Supreme Court); *Estes v. Rodin*, 259 So. 3d 183, 193 (Fla. 3d DCA 2018) (Lagoa, J.) ("[T]he posting of an allegedly defamatory electronic communication on a website accessible and accessed in Florida can constitute a tortious act in Florida sufficient to satisfy Florida's long-arm statute."). The tort of defamation "is committed in the place where the defamatory material is published." *Catalyst Pharms., Inc. v.*

17

*Fullerton*, No. 16-25365, 2017 WL 6558397, a *6 (S.D. Fla. Aug. 8, 2017) (Altonaga, J.), *aff'd* 748 F. App'x 944, 947 (11th Cir. 2018). And where the alleged defamatory statement is published on a website to readers worldwide, the pivotal issue is whether the information was "accessed, and thereby published, in Florida." *Id.*

In the Declaration submitted in support of TM Television's Motion, Mr. Mojena avers that two of the television shows at issue (*Dia a Dia* and *Jay y Sus Rayos X*) are filmed by Telemundo of Puerto Rico and produced by TM Television in Puerto Rico. Mojena Decl. at ¶ 5. Mr. Mojena asserts that once TM Television produces an episode of one of the shows, Telemundo of Puerto Rico "solely determines whether, when and where the episode will be aired or otherwise made accessible. TM Television has no role, control, or decision-making with respect to whether, when and where the Shows will be available for broadcast or online streaming on Telemundo [of Puerto Rico]'s platform, website or elsewhere." *Id.* In short, according to Mr. Mojena, Telemundo of Puerto Rico "films the Shows, provides the raw footage to TM Television for editing, and then broadcasts the Shows in its sole discretion." *Id.* at ¶ 4.

Notably, Plaintiffs did not submit declarations, affidavits, or any other evidence to contradict Mr. Mojena's declaration regarding TM Television's actions in connection with the allegedly defamatory publications.

TM Television argues that Plaintiffs did not sufficiently allege facts showing that TM Television posted or published any of the challenged broadcasts online, thereby, making it accessible to third parties. Reply at 2–3. The undersigned agrees.

In the Amended Complaint, Plaintiffs primarily allege that Defendants Fonseca, Telemundo Network Group, and NBCUniversal Media broadcasted, published, or posted the defamatory statements as follows:

> Fonseca streamed, Internet-posted and broadcasted "news" and commentary stories which contain libelous statements in video segments broadcasted on Telemundo [of Puerto Rico] programs including *Dia a Dia*, *Telenoticias* and *Jay y Sus Rayos X*, *Telenoticias* [sic], (jointly, the "Shows"), which were simultaneously broadcast and or published by several media outlets owned by Telemundo Network [Group] and NBC Universal, which in turn are reverberated by multiple persons employed by or otherwise affiliated with Telemundo [of Puerto Rico], Telemundo Networks and/or NBC Universal.

Am. Compl. at ¶ 18.

On the other hand, Plaintiffs allege that TM Television is "the producer of various Telemundo [of Puerto Rico] programs, including *Dia a Dia*, a variety show, and *Jay y Sus Rayos X*, which promotes itself as an investigative journalism program, all in which Fonseca stars and/or have daily appearances." *Id.* at ¶ 14. Plaintiffs further allege that TM Television's employees "assist in the writing, editing and researching process of the aforementioned shows." *Id.*

Additionally, in the Amended Complaint, Plaintiffs allege that a segment of one the Shows (*Jay y Sus Rayos X*) produced by TM Television was "simultaneously broadcast live by Telemundo Networks and NBC Universal" on July 30, 2019, and that the following day "Telemundo Networks and NBC Universal *published* a video excerpt online." *Id.* at ¶ 113 (emphasis added). Similarly, in each defamation count in the Amended Complaint, Plaintiffs allege that: (1) Defendant Telemundo Network Group "broadcasts programs and original content aimed at Latino audiences within the Commonwealth of Puerto Rico and through live internet broadcast, to other jurisdictions of the United States and the rest of the world"; (2) Defendant Fonseca "streamed, Internet-posted and broadcasted 'news' and commentary

stories which contain defamatory and libelous statements about Plaintiffs in writing and slanderous statements in video segments broadcasted on Telemundo television programs"; (3) NBCUniversal Media "registered, administered, and technologically managed the domain name www.telemundopr.com were the defamatory statements about [Plaintiffs] were published to the world through its internet servers located in Miami, Florida"; (4) NBCUniversal Media "is the owner of Telemundo [of Puerto Rico] and operated and owns the streaming and live programming application that simultaneously broadcasts all of Telemundo [of Puerto Rico] programming throughout the United States and the World"; and (5) TM Television "creates and produces television shows that were broadcast throughout Puerto Rico, Florida [sic]." *See, e.g.*, Am. Compl. Count II at ¶¶ 137–142.

Thus, the allegations in the Amended Complaint do not demonstrate that TM Television posted or published defamatory allegations on any platform. In their Response, Plaintiffs argue that TM Television produces the shows at issue with the knowledge that their content "will be available for broadcast, online streaming on the NBCUniversal Media's Telemundo Puerto Rico smartphone application, in addition to their websites, social media pages, or elsewhere, including different social media platforms such as YouTube, which is accessible to Florida residents." Resp. at 5. Plaintiffs are attempting to impute the conduct of the other named Defendants on TM Television. However, the Court may not consider the actions of the other Defendants in this case as those of TM Television for the purposes of determining whether there is personal jurisdiction over TM Television. *See, e.g., La Tele Prods., Inc. v. TV Azteca*, No. 16-25347-CIV, 2018 WL 4623532, at *4 (S.D. Fla. Sept. 25, 2018) (Moreno, J.) (noting that Florida's long-arm statute "surely does not contemplate impugning the alleged tortious acts of wholly unrelated entities" onto codefendant entity seeking

20

dismissal for lack of personal jurisdiction); *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1331 ("This Court will not consider the actions of other defendants in this case as the actions of the IMG Defendants for the purposes of conducting a jurisdictional analysis."). *Cf. Sovereign Offshore Servs., LLC v. Shames*, No. 17-cv-80172, 2017 WL 7798664, at *4 (S.D. Fla. Aug. 3, 2017) (Middlebrooks, J.) ("Defendant's awareness that his blog posts would be accessible in Florida, by virtue of the nature of the world-wide web, and [Plaintiff]'s physical location in Florida are insufficient to establish that Defendant has minimum contacts with Florida.").

The undersigned finds that Plaintiffs' allegations are not sufficient to subject TM Television to the jurisdiction of this Court under Florida's long-arm statute. Rather, Plaintiffs' allegations demonstrate that TM Television created or produced two of the television shows that contained allegedly defamatory statements about Plaintiffs which were subsequently broadcast and published by Defendants Telemundo of Puerto Rico and Telemundo Network Group on their website and through their mobile application for access anywhere in the world.

Accordingly, Plaintiffs have not provided sufficient factual allegations to show that TM Television committed the tortious act of defamation in Florida for purposes of subjecting TM Television to specific jurisdiction under Florida's long-arm statute, and they have not rebutted TM Television's evidence to the contrary.

## 2.   Due Process

Because the undersigned concludes that Florida's long-arm statute provides no basis for the exercise of jurisdiction over TM Television in this action, the Court need not address the second inquiry, *i.e.*, whether the exercise of jurisdiction comports with due process. *See Moale*, 2020 WL 13389755, at *3 ("Having concluded that Florida's long-arm statute provides

no basis for exercising jurisdiction over [the defendant], the Court need not address the second inquiry: whether the exercise of jurisdiction comports with due process."). Additionally, a finding that jurisdiction is not available under Florida's long-arm statute, "compels the conclusion that jurisdiction is not appropriate under the Due Process clause." *Valencia*, 2017 WL 7792619, at *5. In any event, there is an absence of allegations or evidence sufficient to rebut Defendant Mojena's statements in his Declaration that TM Television has no contacts with Florida.

Accordingly, for the reasons discussed above, the undersigned finds that Plaintiffs have not established that TM Television is subject to specific jurisdiction in this Court, and, therefore, that the Motion to Dismiss for lack of personal jurisdiction, standing alone, should be granted. However, because the undersigned finds and recommends, as discussed below, that the Motion to Transfer should be granted, the undersigned recommends granting the Motion to Transfer and denying the Motion to Dismiss for lack of personal jurisdiction as moot. *See Bernsley*, No. 21-cv-62312, 2022 WL 2915741, *6. The undersigned next addresses TM Television's request to transfer this action to the District of Puerto Rico.

**C.** ***The Transfer Of This Action To The District Of Puerto Rico Is Appropriate***

In the alternative to dismissal, TM Television requests that this case be transferred to the District of Puerto Rico pursuant to Title 28, United States Code, Section 1404(a). Mot. at 12. The remaining Defendants all consent to the requested transfer. [ECF No. 74, at 1].

"It is within the broad discretion of the trial court to determine whether transfer is appropriate." *Walter Int'l Prods., Inc. v. Salinas*, No. 07-20136, 2007 WL 9702166, at *2 (S.D. Fla. May 16, 2007) (Seitz, J.) (citing *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991)). When determining the propriety of transfer to a different district, courts

engage in a two-step analysis. First, the Court determines whether the action could have been brought in the requested district of transfer. Second, the Court considers whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice. *Id.*; *see also Bernsley*, 2022 WL 2915741, at *6. In making this determination, the Court looks to a number of factors including: (1) the plaintiff's choice of forum; (2) the convenience of the parties and witnesses; (3) the availability of the compulsory process for witnesses; (4) access to sources of proof and location of relevant documents; (5) financial ability to bear the cost of change; (6) the public interest; and (7) all other considerations that would make trying the case easy and expeditiously. *See id.*

As the undersigned observed during the August 10, 2022, hearing, the record in this case reflects that there are very limited ties between the allegations and claims in this case and the Southern District of Florida other than the fact that Plaintiffs now reside here and that this is their chosen forum, which is a consideration that should not be disturbed unless strongly outweighed by other considerations. *See Game Controller Tech.,* 994 F. Supp. 2d at 1272. Therefore, the undersigned considers the weight of the relevant considerations.

### 1. Whether This Action Might Have Been Brought In The District of Puerto Rico

The threshold consideration when deciding the merits of a motion to transfer is whether the case may have been brough in the desired district of transfer. An action "might have been brought in any court that has subject-matter jurisdiction, where venue is proper, and where the defendant is amenable to process issuing out of the transferee court." *Carucel Invs., L.P. v. Novatel Wireless, Inc.,* 157 F. Supp. 3d 1219, 1223 (S.D. Fla. 2016) (Bloom, J.) (quoting *Windmere Corp. v. Remington Prods., Inc.,* 617 F. Supp. 8, 10 (S.D. Fla. 1985) (Nesbitt,

J.) (citing 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure § 3845 (1976))).

Initially, the undersigned notes that Plaintiffs do not dispute that this action could have been brought in Puerto Rico, and their counsel confirmed this during the hearing before the undersigned. Moreover, the record reflects that is the case. The District of Puerto Rico has subject matter jurisdiction over this action under Title 28, United States Code, Section 1332 because the parties are diverse and the amount in controversy equals at least $75,000. *See* Am. Compl. at ¶ 16. Second, venue is proper in the District of Puerto Rico because "a substantial part of the events or omissions giving rise to the claim occurred" in that district. 28 U.S.C. § 1391(b)(2). TM Television argues that the challenged reporting was produced entirely in Puerto Rico (Mot. at 13) and submitted unrebutted evidence that its sole office is in Puerto Rico and that its employees live and work in Puerto Rico. *See* Decl. of Mojena at ¶ 3. As such, TM Television is amenable to process in the District of Puerto Rico. *See Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F. Supp. 2d 1292, 1300 (S.D. Fla. 2002) (Gold, J.) (finding action could have been brought in the desired district of transfer because the defendant entities have their principal place of business in that district so there so "there is no question that personal jurisdiction, venue, and service of process would have been proper there").

Accordingly, the undersigned finds that this action could have been brought in the District of Puerto Rico and, therefore, turns to the relevant fairness considerations.

### 2. Fairness Factors

Once it is determined that the action could have been brought in the transferee district, the Court next considers whether the requested transfer would be for the convenience of the parties and in the interest of justice. *See* 28 U.S.C. § 1404(a).

### a. *Locus Of Operative Facts and Plaintiffs' Choice of Forum*

"The locus of operative facts is a primary factor in determining whether to transfer venue." *Estate of Brooks v. United States*, No. 19-24057, 2020 WL 4923639, at *5 (S.D. Fla. Jan. 22, 2020) (Altonaga, J.) (citation omitted). So, too, is the plaintiffs' chosen forum. Generally, a plaintiff's choice of forum is given considerable deference. *Robinson*, 74 F.3d at 260 (plaintiffs' choice of forum should not be disturbed unless it is clearly outweighed by other considerations); *see also Carucel*, 157 F. Supp. 3d at 1225 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). However, "only minimal deference" to that choice is required where "the operative facts underlying the cause of action did not occur within the forum the plaintiff has chosen." *Brooks*, 2020 WL 4923639, at *5 (citing *Capella Photonics, Inc. v. Cisco Sys., Inc.*, No. 14-20529-CIV, 2014 WL 3673314, at *6 (S.D. Fla. July 23, 2014) (Seitz, J.)); *see also Carucel*, 157 F. Supp. 3d at 1225 (same).

Taking the allegations in the Amended Complaint as true, the undersigned finds that the locus of operative facts occurred in Puerto Rico and, consequently, Plaintiffs' choice of forum is entitled to less than normal deference. The challenged broadcasts were produced and published through various television and social media outlets based in Puerto Rico. *See generally* Am. Compl. at ¶¶ 18–19. Although Plaintiffs allege that some of the challenged reporting may have been and continue to be accessible online in Florida, the overwhelming majority of the operative facts occurred in Puerto Rico where Plaintiffs previously resided. In fact, several of the news reporting shows containing the defamatory statements about Plaintiffs were first produced and broadcasted before or around the same time that Plaintiffs still resided in Puerto Rico and claim to have moved to Florida. *See* Am. Compl. at ¶¶ 189– 201 (January 4, 2019 Broadcast); ¶¶ 149–174 (April 16, 2019 Broadcast); ¶¶ 301–313 (June

11, 2019 Broadcast); ¶¶ 314–324 (June 21, 2019 Broadcast) ¶¶ 237–248 (June 25, 2019 Broadcast).

The undersigned notes that Plaintiffs have submitted very limited evidence demonstrating any relevant activity in the Southern District of Florida. [*See* Yapor Declaration, ECF No. 49]. Likewise, Plaintiffs did not provide any evidence supporting their allegations regarding when they moved to South Florida, but Plaintiffs generally allege that they moved at or around June 2019. [*See* Am Compl. at ¶ 6; Resp. at 8–9]. As such, for approximately the first half of 2019, before Plaintiffs claim they moved to South Florida, most of the alleged harm suffered by Plaintiffs occurred in Puerto Rico. *See, e.g.*, *Carucel*, 157 F. Supp. 3d at 1226 ("Although Plaintiff itself has ties to Florida, they are of a recent vintage. As a result, for most of the relevant time period, none of the alleged harm suffered occurred within the Southern District of Florida.").

Accordingly, although deference to Plaintiffs' choice of forum is warranted, given that the locus of operative facts alleged in the Amended Complaint occurred in Puerto Rico, the undersigned finds that Plaintiffs' choice of forum is entitled to less weight and that this factor favors transfer.

**b.** *Convenience Of The Parties*

In general, the "convenience of the parties" factor is "neutral where a transfer would merely shift the inconvenience from one party to another." *MSP Recovery Claims, Series LLC v. Wesco Ins. Co.*, No. 20-cv-24048, 2021 WL 1043892, at *5 (S.D. Fla. Feb. 4, 2021) (Ungaro, J.) (quoting *Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1281 (S.D. Fla. 2020) (Bloom, J.)).

TM Television argues that the District of Puerto Rico would be a more convenient forum for the seven remaning Defendants and that Plaintiffs would not be significantly burdened by the transfer. Mot. at 16–17. As TM Television argues, it is a Puerto Rico corporation with no relevant contacts with the State of Florida. *See* Decl. of Mojena at ¶ 3; *see also* discussion *supra* Section III.A. Similarly, Defendants Telemundo of Puerto Rico and Jagual Media are Puerto Rico entities. Am. Compl. at ¶¶ 9, 11. The individual named Defendants, Messrs. Fonseca and Mojena, are residents of Puerto Rico. *Id.* at ¶¶ 10, 15; *see also* Mot. at 16. Although Defendants NBCUniversal Media and Telemundo Network Group are Delaware limited liability companies and they have some ties to South Florida, they consent to transfer of this action to the District of Puerto Rico. *Id.* at 17, n.1; *see also* Am. Compl. at ¶¶ 12–13. In sum, according to Defendants, most of the Defendants are Puerto Rico entities or residents with minimal, if any, connection to Florida other than this litigation.

Plaintiffs argue in response that they have resided in Florida since June 2019 and were the subject of defamatory statements while living in Florida. Resp. at 8–9. Nevertheless, Plaintiffs' Amended Complaint reflects that they have significant ties to Puerto Rico, including those that gave rise to the alleged defamatory statements. In the Amended Complaint, Mr. Sánchez alleges that he was a former resident and citizen of Puerto Rico and previously worked as an attorney, business consultant, and lobbyist in Puerto Rico. Am. Compl. at ¶ 7. Mrs. Rodríguez graduated from the School of Law of the University of Puerto Rico and is a practicing attorney and member in good standing of the state bar in the District of Puerto Rico. *Id.* at ¶ 8. Additionally, Mrs. Rodríguez held a public position in the Government of Puerto Rico during the years 2009 and 2010 as a special aide to the Executive Director of a public corporation. *Id.*

On the other hand, Defendants, particularly TM Television and Mr. Fonseca, have demonstrated their lack of ties to Florida in relation to this action. Specifically, in his declaration submitted in support of TM Television's Motion, Mr. Mojena averred that TM Television's employees exclusively live and work in Puerto Rico and they do not perform any work for TM Television in Florida. Mojena Decl. at ¶ 3. Similarly, Mr. Fonseca states that the Shows and social media posts at issue are recorded and produced in Puerto Rico. Fonseca Decl. at ¶ 3. Mr. Fonseca proposes, writes, and researches the content for the Shows and social media posts in Puerto Rico. *Id.* Plaintiffs did not submit evidence to contradict these statements. Nor did Plaintiffs submit evidence regarding their current ties to Puerto Rico (or lack thereof). Indeed, when asked at the hearing whether Plaintiffs visit, have family or property or business in, or have any other ties to Puerto Rico, their counsel was unable to say for certain but did represent that they believe Mr. Sanchez travels there occasionally. Meanwhile, Defendants submitted documents reflecting that as recently as 2021, Plaintiffs filed corporate documents in Puerto Rico indicating Plaintiffs maintained business addresses there. *See* ECF No. 103-3.

Plaintiffs argue that transfer to the District of Puerto Rico would be prejudicial to them because they reside in Florida, and litigating in Puerto Rico would be unduly burdensome. Resp. at 10. They also argue and that given the inflammatory and skewed publicity surrounding the challenged broadcasts about them, they might not receive a fair trial in Puerto Rico. *Id.* Plaintiffs have not shown how litigating in the District of Puerto Rico would be any more burdensome to them than it would be for the seven Defendants to litigate this action in this District. In support of their claim that they may not receive a fair trial in Puerto Rico, Plaintiffs point to several messages with threats and offensive language that they received as

proof of the prejudicial publicity against them in Puerto Rico. *See* ECF 69-1, at 170–182. However, the undersigned notes that those messages were sent to Plaintiffs at or around the time the challenged broadcasts were first published in Puerto Rico in 2019. *See id.* Plaintiffs have not demonstrated the threats and negative publicity have continued in the past three years since the defamatory statements were originally published in Puerto Rico.

The undersigned finds that, on balance, the facts and evidence, viewed in the light most favorable to Plaintiffs, demonstrate that it would be far more inconvenient to the parties to proceed with this case in the Southern District of Florida.

Accordingly, the undersigned finds that the convenience of the parties factor weighs in favor of transfer to the District of Puerto Rico.

### c. *Convenience Of The Witnesses And The Compulsory Process*

"The convenience of both the party and non-party witnesses is probably considered the single most important factor in the analysis whether a transfer should be granted." *Gonzalez v. Pirelli Tire, LLC*, No. 07-80453, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008) (Marra, J.). Additionally, the convenience of the witnesses is "best served when witnesses are allowed to testify in the forum where they reside." *Brooks*, 2020 WL 4923639, at *5.

TM Television argues that the witnesses likely to be called by the parties all live in Puerto Rico. Mot. at 15. According to TM Television, the challenged reporting concerns a massive political scandal involving leaked messages between Mr. Sánchez and other former and current government officials with the former governor of Puerto Rico. *Id.* Although TM Television identifies several non-party witnesses likely to be called at trial [ECF No. 32], it is unclear whether these witnesses would be unwilling to testify "of their own accord." *Brooks*, 2020 WL 4923639, at *7. As to compulsory process, the Court cannot compel any unwilling

witness residing outside of Florida to testify. *Id.* (citing *Bell v. Kerzner Int'l Ltd.*, No. 10-23755-CIV, 2011 WL 12656691, at *9 (S.D. Fla. July 14, 2011) (Seitz, J.), *aff'd*, 503 F. App'x 669 (11th Cir. 2012)); *see also* Fed. R. Civ. P. 45(c)(1) (geographically limiting a federal court's subpoena power). Plaintiffs respond that TM Television has not identified any specific non-party witnesses who will be called in a trial of this case, and Plaintiffs contend that only party witnesses and those closely aligned with the parties will be called as witnesses (Resp. at 9), although they offer nothing to support this speculative statement.

A review of Plaintiffs' allegations reflects that, in addition to Defendants and their representatives, most non-party witnesses regarding the facts and allegations in this case are likely to reside in Puerto Rico and are non-Florida residents, such that they are beyond this Court's subpoena power. *See, e.g.,* Am. Compl. at ¶ 18 (alleging the challenged shows "were simultaneously broadcast and or published by several media outlets owned by Telemundo Network Group and NBCUniversal Media, which in turn are reverberated by *multiple persons employed by or otherwise affiliated with* Telemundo [of Puerto Rico], Telemundo Networks and/or NBC Universal") (emphasis added).

Viewing the facts, evidence, allegations, and arguments of the parties in the light most favorable to Plaintiffs, the undersigned finds that the convenience of the witnesses and compulsory process weigh in favor of transfer to the District of Puerto Rico.

### d.   *Location Of Relevant Documents And Ease Of Access To Sources Of Proof*

TM Television argues that the relevant documents and sources of proof are in Puerto Rico because the locus of operative facts in this case occurred in Puerto Rico. Mot. at 16. Plaintiffs respond that "accessing evidence is not an issue as any documents relating to the publication and/or broadcasts . . . can be accessed electronically." Resp. at 9.

"[I]n a world with copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant." *Brooks*, 2020 WL 4923639, at *6 (citation omitted) (cleaned up); *see also MSP Recovery*, 2021 WL 1043892, at *7 (noting "the realities of electronic discovery and mandatory nature of electronic filing diminish any significance that the location of documents might have"). The undersigned agrees that although most, if not all, of the documents related to the broadcasts at issue are in Puerto Rico, this factor does not significantly weigh in favor of transfer.

### e.   *Relative Means Of The Parties*

The parties' briefing is mostly silent on their relative means to litigate this action. Because "not much else is known regarding the parties' financial means and their respective abilities to conduct litigation in a distant forum," the undersigned lacks information on the parties' means and, therefore, this factor is neutral. *Brooks*, 2020 WL 4923639, at *8.

### f.   *Forum's Familiarity With The Governing Law*

Similarly, the parties' briefing does not address the forum's familiarity with the governing law which concerns defamation, slander *per se*, and libel under Florida law. The undersigned finds that this factor does not favor either side of the transfer issue because the District of Puerto Rico is equally as equipped as this Court to apply the laws of Florida. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 67–68 (2013) ("And, in any event, federal judges routinely apply the law of a State other than the State in which they sit.").

### g.   *Trial Efficiency, The Public Interest, And The Interests Of Justice*

According to the Supreme Court, Section 1404(a) was designed to prevent "unnecessary inconvenience and expense to parties, witnesses, and the public." *Continental*

*Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26 (1960). In weighing this factor, courts consider "administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the avoidance of unnecessary problems in conflict of laws or application of foreign law." *Brooks*, 2020 WL 4923639, at *8 (citation omitted).

The Southern District of Florida is considered a "congested" forum. *See id.* According to the National Judicial Caseload Profile prepared by the Administrative Office of the U.S. Courts, the District of Puerto Rico had 2,027 filings for the 12-month period ending on June 30, 2020, whereas this District had 11,717 filings during the same 12-month period.[2] This factor weighs strongly in favor of transfer. *See Brooks*, 2020 WL 4923639, at *8 (noting the relative congestion of the transferor and transferee courts is a relevant consideration in addressing the interests-of-justice factor). Additionally, the District of Puerto Rico has a "local interest in having localized controversies decided at home." *Id.*

Most importantly, TM Television is not subject to general or specific jurisdiction in this Court. *See* discussion *supra* Sections III.A.–B. Consequently, should this action proceed in this District against the remaining Defendants, there may be two separate actions over the same set of operative facts if Plaintiffs decide to sue TM Television in the District of Puerto Rico. Avoiding duplicative litigation serves the public interest and weighs heavily in favor of transfer. *See MSP Recovery*, 2021 WL 1043892, at *5 ("Because the Court lacks personal jurisdiction over at least Defendant AmTrust Insurance Company, the Court agrees that duplicative and/or piecemeal litigation would likely result if the case remained before this

---

[2] National Judicial Caseload Profile, Admin. Office of U.S. Courts, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf (last visited Aug. 9, 2022).

Court. Avoiding duplicative litigation serves judicial efficiency and the public interest and, in turn, weighs heavily in favor of transfer."); *Verde Capital Corp. v. Lausell Aluminum Jalousies, Inc.*, 729 F. Supp. 92, 93 (S.D. Fla. 1989) (transferring case to District of Puerto Rico where court lacked jurisdiction over two defendants, most of the witnesses resided in Puerto Rico, and much of the evidence was located there).[3]

On the whole, the undersigned finds that this case involves individuals, entities, facts allegations, and issues all of which are located or occurred in Puerto Rico, with the exception of Plaintiffs, who formerly resided in Puerto Rico, including during much of the time frame relevant to the issues in this case. While Florida generally has an interest in protecting the rights of its own residents (*see Brown v. Travelers Indem. Co.*, No. 08-CV-168, 2008 WL 11336149, at *3 (M.D. Fla. Apr. 25, 2008)), that interest for the benefit of individuals residing here approximately three years, does not outweigh the significant ties to Puerto Rico and the interest of Puerto Rico in this dispute among Puerto Rican residents and former residents.

Therefore, the undersigned finds that these factors weigh in favor of granting a transfer to Puerto Rico. Accordingly, for all of the foregoing reasons, the undersigned finds that Defendants have satisfied their high burden of demonstrating that a transfer is warranted pursuant to Title 28, United States Code, Section 1404(a).

### D.   *Certain Defendants' Motion to Dismiss [ECF No. 74]*

In their Joinder in the Motion to Transfer, Defendants Telemundo of Puerto Rico, NBCUniversal Media, Telemundo Network Group, Mr. Mojena, Mr. Fonseca, and Jagual

---

[3]     Plaintiffs also raise concerns regarding prejudice they will face if this matter is dismissed. *See* Resp. at 8. However, it appears Plaintiffs may be conflating the standard for dismissal based upon *forum non conveniens* with the transfer statute under Section 1404(a). TM Television makes clear that it neither seeks dismissal under a *forum non conveniens* theory nor dismissal based upon improper venue. Reply at 6–7.

Media also seek dismissal of the Amended Complaint on several grounds, including shotgun or deficient pleading, failure to satisfy a condition precedent, and failure to state a cause of action. [ECF No. 74]. However, in light of the fact that all of the Defendants joined in TM Television's Motion to Transfer and have consented to transferring this action to the District of Puerto Rico, and because the undersigned finds that transferring this action to the District of Puerto Rico pursuant to Section 1404(a) is appropriate, the undersigned recommends that Defendants' Rule 12(b)(6) Motion to Dismiss be denied as moot in order that it may be addressed in the District of Puerto Rico.

## IV.    CONCLUSION

In sum, while Plaintiffs' choice of forum is entitled to deference, the critical factors—convenience of the parties and locus of operative facts—weigh in favor of transfer and do overcome the deference to which Plaintiffs' choice of forum is entitled. Most of the Defendants are at home in Puerto Rico, and all of the alleged events leading to this action occurred in Puerto Rico. Any relevant evidence of or witnesses to Defendants' alleged conduct would be in Puerto Rico. Most importantly, unlike this Court, the District of Puerto Rico has personal jurisdiction over Defendant TM Television. Transferring this action, rather than dismissing it against TM Television for lack of personal jurisdiction, would serve the interests of justice because Plaintiffs will have an opportunity to have their case considered on the merits against all Defendants. Accordingly, the undersigned concludes that transferring this action to the District of Puerto Rico is most convenient and in the interests of justice. *See* 28 U.S.C. § 1404(a).

## V.   RECOMMENDATION

Based on the foregoing, the undersigned respectfully recommends that:

1.  TM Television, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer [ECF No. 73] be **GRANTED IN PART** as to TM Television's request to transfer the action to the District of Puerto Rico, and **DENIED IN PART as MOOT** insofar as TM Television's request for dismissal on grounds of lack of personal jurisdiction;

2.  The Certain Defendants' Motion to Dismiss and Joinder in Motion to Transfer [ECF No. 74] be **GRANTED IN PART** as to the Defendants' joint request and consent to transfer of the action to the District of Puerto Rico and **DENIED IN PART as MOOT** as to the request to dismiss the Amended Complaint;

3.  This action be **TRANSFERRED** to the District of Puerto Rico for further proceedings pursuant to 28 U.S.C. § 1404(a);

4.  Any other pending motions be **DENIED AS MOOT**; and

5.  The Clerk be directed to **CLOSE** this case for administrative purposes.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 12<u>th</u> day of August 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc:     Hon. Marcia G. Cooke
        Counsel of Record